Patricia WHITE, on her behalf and on behalf of all others similarly situated, Plaintiff,

v.

Jerome GOODMAN; Automated Mailing Services, North Shore Agency, Inc.; Time Warner, Inc. and Book of the Month Club, Inc. d/b/a Homestyle Book Club, Defendants.

No. 97 C 7078.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 30, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Anne Michelle Burton, Edelman & Combs, Chicago, IL, Adam Goodman, Peterson & Ross, Chicago, IL, for plaintiff.

George William Spellmire, David Matthew Schultz, Hinshaw & Culbertson, Chicago, IL, for defendants.

*MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiff, in February 1997, received a collection letter on the letterhead of North Shore Agency, Inc. The front side reads as follows:

February 11, 1997

RE: HOMESTYLE BOOK CLUB

\*\*NBL \*\*
PATRICIA WHITE
11838 S. LOWE AVE
CHICAGO IL 60628–5807

Amount Due $18.45

ACCOUNT STATUS: DELINQUENT

Dear Patricia White:

Your account with our client is delinquent because of your refusal to pay the $18.45 that HOMESTYLE BOOK CLUB states is legally due.

You have two choices.

1. Pay the full amount of $18.45.
2. Be prepared for further collection activity.

The smart decision is to write a check for the full amount due. That action will delete your delinquent account information from our clients records.

Mail a check for the full outstanding amount owed to HOMESTYLE BOOK CLUB in the envelope provided.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

February 11, 1997          06RRNBL0020809          3D12000001 \*2 \*\*
                                                    NBL \*
                                                    Sincerely,
          BL97038               001477              00018451

067116801090                                        [signed] E.J. Sullivan
HOMESTYLE BOOK CLUB                                       Collection Mgr.
\*\*NBL \*\*

The reverse side reads in part as follows:

The State of Colorado requires that we furnish Colorado residents with the following information: If you notify us in writing that: (A) you refuse to pay the debt or want us to cease further communication, then we shall not communicate further with you except to advise you that: 1) we or the creditor: a) may invoke specified remedies ordinarily invoked; or b) intend to invoke specified remedies permitted by law; or 2) our collection efforts are being terminated; (B) you wish us to cease contact by phone at your place of employment, no such further contact will be made. When doing business in Colorado, collec-

tion agencies are licensed by the Collection Agency Board in the Dept. of Law, 1525 Sherman Street, 5th Floor, Denver, CO 880203. Payments should be directed to the address indicated on opposite side of this form, and NOT to the Collection Agency Board.

That letter has led to this purported class action lawsuit against North Shore Agency, Inc. (NSA); the creditor Book of the Month Club, Inc. (Book Club); the affiliated mailing company, Automated Mailing Services; and Jerome Goodman, the principal of both North Shore and the mailing company at the time. Plaintiff claims that the letter violated the Fair Debt Collection Practices Act (FDCPA) in two respects. She contends that the letter falsely suggests that NSA is involved in collecting Book Club's debts, when it is not, at least not in any meaningful way, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10) and 1692j, and that the listing of the rights of Colorado consumers on the reverse side misleads consumers into believing that only Colorado residents have those rights, in violation of § 1692e and 1692e(10).

The various defendants raise a number of defenses individual to themselves. Those defenses are irrelevant, however, if they prevail on a common defense—that the letter passes muster under the FDCPA. The defendants move for summary judgment, claiming that it does. Plaintiff cross-moves for partial summary judgment, claiming that it does not. We grant defendants' motions for summary judgment and we deny plaintiff's cross-motion for partial summary judgment.[1]

The core of plaintiff's first claim is that the letter is used to create a false belief in a consumer that a person (NSA) other than the creditor (Book Club) is participating in the debt collection when that person is not so participating, a violation of § 1692j. That practice, plaintiff contends, misleads consumers into believing that Book Club has retained NSA to collect book debts, when that is not the case, thus violating other provisions of the FDCPA.

■ We begin with the notion that alleged debtors are more apt to pay attention to the demands of a party other than the creditor. The creditor has referred the matter to a professional debt collector, "the price of poker has just gone up." *Avila v. Rubin,* 84 F.3d 222, 229 (7th Cir.1996). If the creditor sends out dunning letters that indicate it has so referred the matter, and it has not, the FDCPA has been violated. For example, a creditor cannot send a dunning letter on an attorney's letterhead when the attorney is not participating in the collection effort and is only lending his name. (That also violates § 1692e(3).) Similarly, a debt collector cannot furnish form letters bearing its name to a creditor for a fee (known as "flat rating), when it is otherwise not involved in the collection effort".

But what does "participating" mean? Plaintiff says that means meaningful participation. Defendant claims any participation is enough. We do not believe it is necessary to join that debate, other than to note that a minimal participation is not enough. The preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation. Having the creditor return the letters for mailing by the debt collector from the appropriate zip code, a wholly ministerial act, would undoubtedly not relieve the creditor from liability. But here the participation is sufficient under any standard.

■ The debt collection is divided into two phases. In the first or pre-contingency phase NSA sends out letters, ostensibly

---

1. Plaintiff argues that the issue is one of law when the objective factors are not in dispute. There is support for that view, *see Terran v. Kaplan,* 109 F.3d 1428, 1432 (9th Cir.1997), and FDCPA cases are often decided on cross-motions for summary judgment even though the court purports to follow summary judgment standards. We believe that plaintiff cannot prevail here, regardless of the standard.

as a debt collector, for a modest flat rate. However, even if we confine our attention to the pre-contingency phase, NSA's participation is considerably greater than flat-rate mailings. Book Club first attempts to collect on its own. If that effort is unsuccessful, it transmits by electric modem information regarding delinquent accounts, primarily to NSA. This information includes the debtor's name, address and the amount of the debt. NSA then includes that information in its own data base and screens it through several filters. That includes checking the account against its bankruptcy file and another file listing known "deadbeats" (the "fraud" file), and standardizing the address. NSA sends two letters to persons with no Book Club payment history and eight letters to persons with a payment history, in the event the series is not interrupted by payments. The form of the letters is prepared by NSA with the approval of Book Club. NSA and Book Club meet periodically to discuss collection strategies. The letters call for payment directly to Book Club. They also provide a telephone number for NSA. That number reaches an automated system that provides answers to frequently asked questions and a means for recording standard responses. If an account disputes the debt, the account is returned to Book Club.

We believe, moreover, that we should not confine our attention to the pre-contingency phase. If the two-letter or eight-letter series is unsuccessful, the collection effort moves into a contingency phase. All accounts that remain uncollected at the end of the pre-contingency phase remain with NSA for collection on a contingency basis. It pursues the collection effort at its discretion, payments are made directly to NSA, and NSA keeps 35 per cent of the proceeds. Thus, once Book Club has transmitted the account information to NSA, the debt collector will pursue collection through the contingency phase, except for accounts initially screened out by NSA or in dispute. When the information is transmitted, NSA becomes an integral part of the collection effort and the price of poker has indeed gone up.

■ The second issue relates to the disclosure of Colorado rights on the reverse side of the letter. Plaintiff claims that the disclosure misleads unsophisticated consumers into believing that the right to end debt collection communications belongs exclusively to Colorado residents, whereas non-Colorado consumers have parallel federal rights, pursuant to 15 U.S.C. § 1692c(c). Defendants contend that the paragraph accurately describes Colorado disclosure requirements that have no parallel in federal law and that the Colorado substantive rights differ from the protections afforded by the federal statute.

The FDCPA has, in a sense, led to a new role for federal courts: scriveners of collection letters. We are also well aware that our conclusions here are but a way-station to definitive appellate review. And we conclude that the Colorado notification is not a violation.

Defendants rely heavily upon *Brown v. ACB Business Services, Inc.*, 1996 WL 469588 (S.D.N.Y.), where the court believed that the Colorado notification could possibly be misleading to a non-Colorado resident, but that requiring a notification of federal cessation rights would improperly read into the statute a federal disclosure requirement. Plaintiff relies heavily on *Jenkins v. Union Corp.*, 999 F.Supp. 1120 (N.D.Ill.1998), in which Judge Castillo concluded that the notification was misleading. He suggested that the debt collector might want to consider a preface that the disclosure is a requirement of state law and does not contain a complete list of the rights consumers have under state and federal law, thus obviating any specific disclosures of federal rights. Recently, Judge Leinenweber agreed with Judge Castillo in an oral opinion in *Villereal v. Abacus Financial Management Services*, 98 C 1192 (N.D.Ill.1998), but he noted that defendant would have had a better argument if the notice had said Colorado law required the

creditor to notify the debtor of those rights, rather than just stating that Colorado residents had certain rights.

We note, first, that the Colorado rights are marginally different from federal rights, although we do not conclude that to be a valid basis for the form of notification adopted by NSA. However, the notification here differs from the notification in the cases cited by the parties. The notification is similar to that which Judge Leinenweber thought provided a better argument. Judge Castillo's suggestion is even better, but we think the notification here satisfies the statute. It is accurate. It can be misleading only if it implies to an unsophisticated (not "least sophisticated") consumer that if there were similar federal rights they would have to be disclosed. But if that is the implication, then virtually all collection letters conforming to the FDCPA would be misleading because the statute requires disclosure of some rights, e.g., 15 U.S.C. §§ 1692e(11) and 1692g, but not of others. We think the only reasonable implication of the notification here is what in fact is the case: federal and other state statutes do not require disclosure of such rights, if there be such rights.

## CONCLUSION

We grant defendants' motion for summary judgment and deny plaintiff's motion for partial summary judgment. We deny defendants' motion for leave to amend their response to plaintiff's request for admission as moot.