**Patricia J. ROE, Plaintiff,**

v.

**PUBLISHERS CLEARING HOUSE, INC., Defendant.**

**No. 98 C 3330.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 17, 1999.

**1100**

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, Charley Hoon Lee, Edelman & Combs, Chicago, IL, for Patricia J. Roe, plaintiff.

Reuben L. Hedlund, Margo Wolf O'Donnell, Andrea L. Caplan, Hedlund, Hanley & John, Chicago, IL, for Publishing Clearing House, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Patricia Roe has filed a one-count class action complaint against defendant Publishers Clearing House Inc., alleging that defendant is a debt collector under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and that defendant violated § 1692e by using false and misleading representations to collect plaintiff's debt. Defendant moves to dismiss the complaint under Fed. R.Civ.P. 12(b)(1) or 12(b)(6), arguing that defendant is not a "debt collector" under the FDCPA.

## FACTS

According to the complaint, plaintiffs are residents of Illinois. Defendant Publishers Clearing House is a New York corporation doing business in the Northern District of Illinois. In October and November of 1997, plaintiff Roe received three letters entitled "Debtor File Referral Pending." The letters, copies of which were attached to the amended complaint as Exhibits A–C, state: "This is a demand made on behalf of Publishers Clearing House for payment on your delinquent balance.... If you do not pay promptly, Publishers Clearing House has informed us that your file will be referred to us or another collection agency which is properly authorized to undertake collection activity.... It is in your best interest to promptly mail your payment." Plaintiffs assert that the type of document represented by Exhibits A–C is a "precollection" letter which falsely suggests that a third party collection agency, GC Services, has become involved in collecting the debt.

## STANDARDS

Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Rule 12(b)(1) motions are prem-

ised on either facial or factual attacks on jurisdiction. *Villasenor v. Industrial Wire & Cable, Inc.*, 929 F.Supp. 310, 311 (N.D.Ill.1996). If defendant makes a factual attack on the plaintiff's assertion of subject matter jurisdiction, it is proper for the court to look beyond the jurisdictional allegations in the complaint and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993) (per curiam); *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir.1989). To withstand such a motion, the plaintiff must put forth " 'competent proof' " that the court has subject matter jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995) (quoting *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Put another way, the plaintiff must prove by "a preponderance of the evidence or 'proof to a reasonable probability' that jurisdiction exists." *Id.* (quoting *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993)).

Under Rule 12(b)(6), the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir.1996). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World*, 73 F.3d at 1428.

## DISCUSSION

Section 1692e applies to debt collectors, not creditors. However, § 1692a(6) defines a debt collector as including "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." According to plaintiff, defendant falls within this exception because it pays a collection agency, GC Services ("GCS"), to mail collection letters. Plaintiff alleges that, at the time GCS sent the letters that are the subject of the present lawsuit, defendant had not yet hired GCS to perform any actual collection services.

Defendant argues that it cannot be liable under § 1692a(6) because it did not pretend to be GCS and send its own letters under GCS's name, but hired GCS to send letters under GCS's name. Defendant relies on the interpretation of § 1692a(6) in *Villarreal v. Snow*, 1996 WL 473386, at *3 (N.D.Ill. Aug.19, 1996) (denying a motion to reconsider), which held that "a creditor does not fall within the 'used a name other than its own' exception unless the creditor actually pretends to be someone else or uses a pseudonym or alias." Defendant admits, however, that § 1692a(6) also applies to a creditor who hires a debt collection agency to send letters but does not otherwise involve the agency in the debt collection process. *See Fratto v. Citibank (South Dakota), N.A.*, 1996 WL 554549, at *7–8 (N.D.Ill. Sept.25, 1996) (holding that a creditor could be liable for the misrepresentations in a letter mailed by a collection agency hired to send the letter); *see also Arellano v. Etan Industries, Inc.*, 1998 WL 911729, at *3 (N.D.Ill.Dec.23, 1998) (denying a motion for summary judgment on a § 1692(a) issue because the parties disputed the degree of participation of the creditor and the ostensible debt collector). Plaintiff alleges that defendant is just such a creditor.

According to the deposition of Wendy Smith, defendant's Director of Credit and Collections,[1] defendant's collection process

---

1. The court may consider matters outside the pleadings to determine whether subject mat-

is divided into two phases, the initial phase and the contingency phase. During the initial phase, defendant transmits information about its debtors to GCS. GCS, with defendant's approval, creates a letter indicating GCS's and defendant's name and address, and mails it to debtors. Defendant pays GCS for each letter mailed. The letter, however, does not have a telephone number for GCS or defendant, and requests that debtors send payment directly to defendant. In addition, the letter states: "If you do not pay promptly, PUBLISHERS CLEARING HOUSE has informed us that your file will be referred to us or another collection agency," suggesting that at the time the letter is sent, defendant has not yet referred the debtor's file to GCS or any other collection agency. If a debtor does not respond by a certain time, defendant decides whether to pursue collection and the collection process enters the contingency phase. At this point, defendant assigns to collection agencies other than GCS eighty percent of the delinquent accounts it has decided to pursue. GCS therefore pursues collection on the accounts of less than twenty percent of the debtors to whom it sends an initial letter.[2]

Defendant relies on two cases in which courts held creditors not liable under § 1692a(6). In *White v. Goodman*, 1998 WL 850814 (N.D.Ill.Dec.2, 1998), the evidence produced during discovery revealed that, during the initial phase, Book Club, the creditor, would send debtor information to NSA, the ostensible debt collector. *See id.* at *2. NSA would incorporate this information into its own database, cross-

check it against its bankruptcy files and files of known "deadbeats," and send different numbers of letters depending on whether the debtor was a first time or repeat offender. *See id.* The letters sent in the initial phase listed NSA's phone number. On the basis of these facts, Judge Moran held that NSA did more during the initial phase than send flat-rate[3] mailings. *See id.*

In the instant case, the court does not have as much information about GCS's involvement in the initial phase because the case is only at the motion to dismiss stage. The contingency phase described in the present case, however, is quite different from that described in *White*. In that case, all accounts remained with NSA after the initial phase, and NSA, not Book Club, had the authority to decide whether to pursue collection at this point. *See id.* at *3. The court found that "once Book Club has transmitted the account information to NSA, the debt collector will pursue collection through the contingency phase, except for accounts initially screened out by NSA or in dispute." *Id.* On the basis of its finding that NSA became involved in collecting on the accounts of nearly all of the debtors to whom NSA sent letters, the court held that NSA, not Book Club, was operating as the debt collector when it sent the initial letters.

Defendant also cites *Epps v. Etan Industries, Inc.*, 1998 WL 851488 (N.D.Ill. Dec.1, 1998), in which Judge Castillo held on a motion for summary judgment that Blockbuster, a creditor, was not operating as a debt collector under the FDCPA. *See id.* at *6. The undisputed evidence in *Epps*

---

ter jurisdiction exists under Rule 12(b)(1). *See, e.g., Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995).

**2.** Assuming that some debtors who receive an initial letter settle the bill, and that defendant declines to pursue other such debtors, the pool of debtors that enters the contingency phase is smaller than the pool of debtors who receive an initial letter. Twenty percent of the contingency pool is therefore less than twenty percent of the initial pool.

**3.** The FDCPA's legislative history defines a flat-rater as "one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once." *See Randle v. GC Services, L.P.,* 25 F.Supp.2d 849, 853 (N.D.Ill.1998) (quoting S.Rep. No. 95–382, at 5, reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

 

demonstrated that CPA, the ostensible debt collector, drafted and mailed letters for Blockbuster, staffed a call center to field debtors' questions, and recommended how Blockbuster should pursue stubborn debtors. *See id.* at \*5. The court emphasized that Blockbuster did not compensate CPA for each letter mailed, but paid CPA for successful collection attempts only. *See id.* at \*6.

 The present case more closely resembles *Domico v. Etan Industries, Inc.,* 1998 WL 765058 (N.D.Ill. Oct.26, 1998). The plaintiff in *Domico* alleged that the creditor, TCI, was operating as a debt collector even though it had hired CPA, a collection agency, to create and mail letters. As in the present case, TCI provided CPA with debtor information and CPA drafted and sent letters directing debtors to send their payments and all other communications directly to TCI. The court denied defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6), holding that plaintiff had stated a claim under § 1692a(6) by alleging that "TCI is merely renting or borrowing CPA's name and letterhead to assist in its own debt collection activities." *Id.* at \*4.

The court finds that plaintiff sufficiently alleges that defendant is operating as the debt collector when GCS mails the initial letter. The letter states that the debtor's file "will be referred" for collection, indicating that it has not yet been referred to any collection agency. *See, e.g., Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 237 (2d Cir.1998) (holding that the use of the phrase "will be reported" in a letter "supports an inference that, since the account may be reported to a collection agency, [the ostensible debt collector] Debtor Assistance is not such an agency," though the court noted that the unsophisticated consumer might just as easily draw the opposite inference). Moreover, the evidence reveals that GCS never pursues collection on the accounts of over eighty percent of the debtors to whom it sends the initial letter.

These facts distinguish the present case from cases in which courts have held that a debt collector's participation in the process exempted the creditor from liability. When the initial letter is sent, defendant has not yet retained another entity to collect its debts. At this point, therefore, defendant alone is operating as the debt collector.

## CONCLUSION

The court finds that plaintiff has alleged that defendant is a debt collector under § 1692a(6). Defendant's 12(b)(1) and 12(b)(6) motion to dismiss is therefore denied.