**Andrew PETERS, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**AT & T CORPORATION, GC Services Limited Partnership, DLS Enterprises, Inc., and GC Financial Corporation, Defendants.**

No. 97 C 8273.

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1999.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Anne Michelle Burton, Edelman & Combs, Chicago, IL, Adam Goodman, Peterson & Ross, Chicago, IL, for Andrew Peters.

John Henry Wickert, Fay Clayton, Michael R. LaPorte, Robinson, Curley & Clayton, P.C., Chicago, IL, for AT & T Corporation.

David Matthew Schultz, John Matthew Foley, Robert H. Muriel, Hinshaw & Culbertson, Chicago, IL, for GC Services Limited Partnership, DLS Enterprises, Inc., GC Financial Corporation.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Andrew Peters brought this class action against AT & T Corporation ["AT & T"], GC Services Limited Partnership ["GC Services"], DLS Enterprises, Inc. ["DLS"], and GC Financial Corporation ["GC Financial"], for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* All of the parties move for summary judgment. For the following reasons, all of the motions are denied.

### Background

This lawsuit arises from a letter Mr. Peters received from GC Services regarding his overdue balance with AT & T. The letter was written on GC Services letterhead, and reads as follows:

DEAR MR ANDREW PETERS:

WE HAVE BEEN INFORMED THAT YOU PRESENTLY ·HAVE A LONG

OVERDUE BALANCE (NOTED ABOVE) FOR AT & T LONG DISTANCE TELEPHONE SERVICE. THEY HAVE ASKED U.S. TO HELP RESOLVE THIS MATTER.

YOU HAVE BEEN A VALUED CUSTOMER TO AT & T, AND THEY ARE ANXIOUS TO HAVE YOU SETTLE YOUR ACCOUNT WITHOUT FURTHER COLLECTION ACTIVITY. PLEASE MAIL YOUR PAYMENT PROMPTLY ALONG WITH THE BOTTOM PORTION OF THIS LETTER—TO AT & T IN THE ENCLOSED ENVELOPE.

IF YOU FAIL TO SETTLE THIS ACCOUNT, FURTHER COLLECTION ACTIVITY WILL BE TAKEN BY U.S. OR ANOTHER AGENCY. THANK YOU FOR YOUR PROMPT ATTENTION TO THIS MATTER. IF YOU HAVE ANY QUESTIONS CONCERNING THIS ACCOUNT, PLEASE CONTACT YOUR AT & T BUSINESS OFFICE AT 1-800-532-7486.

The letter directs Mr. Peters to make his check or money order payable to AT & T. The address, but not the phone number, for GC Services is included in the letterhead. The class of plaintiffs has received similar letters.

AT & T's strategy for collecting past due debts can be summed up as follows. If debtors do not pay money owed to AT & T after it sends its own delinquency notices, AT & T hires a professional debt collector, such as GC Services. AT & T electronically transmits to GC Services the amount owed by the debtor as reflected in AT & T's records. AT & T then pays GC Services a $0.54 per account fee for GC Services' initial collection efforts ("Stage I"), which include sending form letters such as the one received by Mr. Peters. If debtors do not respond, AT & T hires either GC Services or another debt collector and pays that debt collector a contingent fee to perform further collection activities ("Stage II").

The plaintiffs allege that Stage I of AT & T's collection scheme is misleading and subjects AT & T, GC Services, and the general partners of GC Services to liability as debt collectors under the FDCPA. All of the parties have filed motions for summary judgment.

### AT & T and GC Services

The FDCPA holds debt collectors liable for deceptive practices. Although a creditor is generally exempt from liability under the FDCPA when it collects its own debts, a creditor becomes a debt collector within the meaning of the statute when, "in the process of collecting his own debts, [he] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The plaintiffs argue that AT & T merely used GC Services' name to collect its own debts, and is therefore a debt collector under the FDCPA. The plaintiffs further argue that AT & T's efforts to suggest that GC Services is involved in collecting debts is misleading in violation of 15 U.S.C. § 1692(e).[1] In its cross-motion for summary judgment, AT & T argues that GC Services was actually hired to help AT & T collect debts, and that GC Services was involved in debt collection. According to AT & T, AT & T is therefore not a debt collector. The plaintiffs additionally move for summary judgment against GC Services and its general partners, arguing that GC Services is liable for furnishing misleading forms in violation of 15 U.S.C. § 1692j.[2]

---

1. 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes the use of any name "other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).

2. Pursuant to 15 U.S.C. § 1692j, "[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a

GC Services has filed a cross-motion for summary judgment, arguing that it did participate in the collection of debts.

The parties do not dispute that GC Services is a professional debt collector hired by AT & T. Instead, the contested issue is whether, and to what extent, GC Services is involved in collecting AT & T's debts in Stage I. I agree with the plaintiffs that an analysis of the relationship between AT & T and GC Services is necessary, as opposed to a cursory look at whether AT & T hired a debt collector. *See, e.g., Arellano v. Etan Indus., Inc.,* 1998 WL 911729 (N.D.Ill.1998) (examining relationship between creditor and debt collector); *White v. Goodman,* 1998 WL 850814 (N.D.Ill.1998) (the same); *Epps v. Etan Indus., Inc.,* 1998 WL 851488 (N.D.Ill.1998) (the same).

Minimal participation by a debt collector in the collection process is not enough to avoid liability under the FDCPA. As the court noted in *White,* "[t]he preparation of form letters lending a debt collector's name is a participation of sorts, and explicitly a statutory violation." *White,* 41 F.Supp.2d 794, ——, 1998 WL 850814, at *2. To determine whether parties can be held liable under the FDCPA, courts have focused on whether the collection agency was hired only as a mailing service, or whether the collection agency performs more traditional collection services as well. *Epps,* 1998 WL 851488, at *4. "[M]erely mailing letters is not the sort of meaningful participation in debt collection that absolves a defendant of § 1692 liability." *Randle v. GC Services,* 25 F.Supp.2d 849, 854 (N.D.Ill.1998).

When evaluating cross-motions for summary judgment, I must view the facts in the light most favorable to the non-moving party in each instance. Both parties rely primarily on depositions by Gerald G. Matlesky, staff manager for AT & T's outside collection agency work, and by Diana C. Derbas, a manager at GC Services who oversees the operational functions of letter collection. AT & T also relies on an affidavit submitted by Mr. Matlesky. This evidence, along with the letter sent to Mr. Peters, is conflicting on the issue of whether GC Services was acting as the debt collector.

Ms. Derbas states in her deposition that her department at GC Services creates collection strategies for overdue AT & T accounts. She is, however, unaware of the success rate of the letter program, and Mr. Matlesky says that he does not recall any conversations regarding the business strategy behind the letter program. In his affidavit, Mr. Matlesky states that the original draft of the form letter at issue emanated from AT & T in 1985, but that the letter used by GC Services since 1987 is substantially the work of GC Services, which has continually revised the draft. Mr. Matlesky's deposition testimony, however, indicates that the letter has not been significantly changed since at least December 1996, when he started in his current position. Mr. Matlesky also says in his deposition that AT & T must approve any substantive changes made by GC Services.

According to Mr. Matlesky, GC Services communicates with AT & T to assist in negotiating settlements. Ms. Derbas, however, does not even know the name of a contact person at AT & T, and says that she rarely deals with anyone at AT & T. She has met only one such individual, whose name she cannot recall. Ms. Derbas' department, which sends the letters, is not the same department that works on a contingency fee basis in Stage II. AT & T assigns approximately 15% of its Stage II accounts to GC Services randomly, without even considering whether GC Services was involved with the account in Stage I.

person other than the creditor ... is participating in the collection ... when in fact such

person is not so participating."

Mr. Matlesky's affidavit states that GC Services has discretion regarding how to handle questions from AT & T customers during the collection process. Ms. Derbas, however, says that AT & T requires GC Services to obtain approval for some types of communications. According to Ms. Derbas, GC Services retains the information regarding each account in its computer for some time. Yet when AT & T mistakenly requested GC Services to send many of the same letters twice in a six-month period, GC Services did not catch the mistake. In addition, Ms. Derbas says that any mail received regarding AT & T accounts may be forwarded to AT & T without GC Services necessarily retaining a copy. Moreover, when GC Services takes a call from an AT & T customer, the customer is ultimately given AT & T's telephone number.

Ms. Derbas says the $0.54 flat fee paid to GC Services by AT & T includes follow-up services such as receiving telephone calls and responding to correspondence from AT & T customers. Although GC Services' address is included in the form letter, its telephone number is not. Instead, the person to whom the letter is addressed is directed to contact AT & T, and is supplied with AT & T's telephone number. Ms. Derbas states that nonetheless AT & T customers have somehow contacted GC Services by telephone. Ms. Derbas is unaware of the frequency of calls received from AT & T customers; she is also unable to specify the amount of mail GC Services receives from AT & T customers, even whether it receives more than one letter per month. GC Services sends approximately 30,000 AT & T letters per month.

The degree to which GC Services participated in the collection of debts is a factual dispute that cannot be resolved on a motion for summary judgment. *See Arellano,* 1998 WL 911729 (denying cross-motions for summary judgment where degree to which defendants participated in collection process was disputed); *Fratto v. Citi-*

*bank (South Dakota),* 1996 WL 554549 (N.D.Ill.1996) (denying defendant's motion for summary judgment where evidence showed that defendant, a creditor, might qualify as a debt collector despite the fact that it hired a collection agency to send collection letters). Therefore all of the motions for summary judgment are denied.

*The General Partners*

The general partners of GC Services, DLS and GC Financial, additionally argue that they cannot be held liable as debt collectors under the FDCPA because they are not debt collectors within the meaning of the FDCPA. As I have previously held in this case, general partnership law determines whether DLS and GC Financial are liable for the acts of GC Services under the FDCPA. GC Services, a professional debt collection agency, is a partnership organized under Delaware law. GC Services mails approximately 30,000 AT & T letters per month in its third party collection program, which is clearly within the scope the partnership's business. Delaware partnership law provides that "all partners are liable ... [j]ointly and severally for everything chargeable to the partnership...." Del.Code.Ann. tit. 6, § 1515(a). Under Delaware partnership law and the Uniform Limited Partnership Act § 403 (amended 1985), the General Partners are vicariously liable for the acts of GC Services, the limited partnership. *See also Randle,* 25 F.Supp.2d at 851–52 (finding that the general partners of GC Services, DLS and GC Financial, are vicariously liable for the acts of GC Services under general principles of partnership law and Delaware partnership law). Therefore the summary judgment motions by DLS and GC Financial are denied.