**Mary B. BORCHERDING–DITTLOFF, Plaintiff,**

v.

**TRANSWORLD SYSTEMS, INC., Defendant.**

**No. 98–C–489–C.**

United States District Court, W.D. Wisconsin.

June 10, 1999.

---

Carla O. Andres, Andres Law Office, LLC, Portage, WI, for Borcherding–Ditt-loff, Mary B.

Dennis M. Cook, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, WI, for Trans-world Systems, Inc.

## OPINION AND ORDER

CRABB, District Judge.

This is a class action lawsuit for declaratory and monetary relief brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. On behalf of a class of similarly situated Wisconsin consumers, plaintiff Mary Borcherding–Ditloff contends that a series of five collection letters sent by defendant Transworld Systems, Inc. violates two provisions of the FDCPA by implying that recipients do not have certain rights provided under the act. Federal question jurisdiction is present. 15 U.S.C. § 1692k(d); 28 U.S.C. § 1331.

The case is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment as to liability only. I conclude that the first four letters received by plaintiff violated 15 U.S.C. § 1692e because they would mislead the unsophisticated

consumer into believing erroneously that she does not have the right under the FDCPA to cease communication with a debt collector. This violation is not excusable under 15 U.S.C. § 1692k(c) as a bona fide error. Defendant's motion will be denied and plaintiff's motion will be granted.

## UNDISPUTED FACTS

Plaintiff Mary Borcherding–Dittloff resides in Janesville, Wisconsin. Defendant Transworld Systems, Inc. is a debt collection agency within the meaning of the Fair Debt Collection Practices Act. Defendant offers a prepaid letter collection service that typically consists of a series of five dunning letters mailed to debtors in 14–day intervals over the course of a 70–day period. Defendant sent this series of five letters to plaintiff between April 22 and June 17, 1998. The back of each of these letters contained the following statement:

### WISCONSIN

1. This collection agency is licensed by the office of the Commissioner of Banking—P.O. Box 7876—Madison, Wisconsin 53707–7876.

### TENNESSEE

2. This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37219.

### COLORADO

3. If you refuse to voluntarily pay this debt, or you wish our agency to cease communication either written or oral at either your place of employment or residence, and you so advise Transworld Systems, Inc. in writing, we will not communicate with you further, except:

To advise you that we intend to invoke specified remedies permitted by law or specified remedies we ordinarily invoke; or the more unlikely event to advise you our efforts are being terminated.

However, before you take this action, we recommend you consider the only alternatives you are leaving to collect this debt.

Transworld Systems, Inc. is a licensed collection agency regulated by the Colorado Collection Agency Board in the Department of Law located at 1525 Sherman Street, 5th Floor, Denver, Colorado 80202.

### MINNESOTA

4. This collection agency is licensed by the Minnesota Department of Commerce.

Defendant is required by the laws of Wisconsin, Tennessee, Colorado and Minnesota to print these messages beneath each state's name somewhere on collection letters sent to residents of these states. These messages appear on the back of all collection letters sent by defendant, regardless where the recipient lives. The following statement appeared near the bottom of the front side of each of the letters sent to plaintiff: "NOTICE—SEE IMPORTANT MESSAGE NO. 1 ON REVERSE SIDE." Before June 5, 1998, this message did not appear on letters sent to debtors living outside Wisconsin, Tennessee, Colorado or Minnesota; nothing referred recipients to the information on the back of these letters. As required under Wisconsin law, both versions of defendant's letter have been submitted to the Wisconsin Office of Commissioner of Banking for many years. Without exception, the commission has returned these letters stamped "approved".

Plaintiff has relied on the Wisconsin commission's approval of its letters as well as on a memorandum prepared by the Colorado Collection Agency Board that informs debt collectors operating in Colorado of relevant provisions of the state's Fair Debt Collection Practices Act. Among other things, the memorandum notes that dunning letters must inform recipients that they enjoy certain rights under the Colorado act and that sending a letter

without these disclosures is a violation of the act. The memorandum provides the following suggestion for agencies that operate in multiple states: "Out-of-state collection agencies should be sure that the additional Colorado consumer rights information and the Board's address are printed only on notices sent to Colorado zip codes or is preceded by warning language such as 'Colorado Residents.'"

On March 30, 1998, the District Court for the Northern District of Illinois decided *Jenkins v. Union Corporation*, 999 F.Supp. 1120, 1139 n. 13 (N.D.Ill.1998). Among other things, the plaintiffs contended that the same letter at issue in this lawsuit violated the Federal Fair Debt Collection Practices Act.[1] The district court agreed. In a footnote, the court suggested that defendant could bring the letter into compliance by adding the following sentence: "We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law." Defendant redrafted this suggested language to read: "We are required under some states [sic] laws to notify consumers of certain rights as detailed in the list on the back of this notice. This list does not contain a complete list of the rights consumers have under state and federal law." Defendant's president placed his highest ranking information systems employee in charge of the effort to implement this change and assigned a high priority to the project. Nevertheless, it took defendant approximately two months to incorporate the new language into its letters. The delay was attributable to a number of factors, including time spent consulting with legal counsel, modifying computer programs and adjusting the format of approximately 240 different letters, each of which had to be personally approved by defendant's president. Defendant began sending letters with the new disclaimer language on June 5, 1998. The last letter received by plaintiff contained this language.

Defendant tries to keep abreast of changes in state and federal collection laws. It does so by belonging to the American Collectors Association, which sends publications to defendant that discuss emerging trends in the FDCPA. These publications are reviewed by defendant's president and other employees to insure that defendant complies with the act.

## OPINION

Under 15 U.S.C. § 1692e, debt collectors are prohibited from using "false, deceptive, or misleading ... means in connection with the collection of any debt." Another section of the FDCPA requires debt collectors to provide certain information to consumers in something known as a "validation notice." *See* 15 U.S.C. § 1692g(a). Disclosure is limited to the amount of the debt, the name of the creditor and statements regarding the amount of time that the consumer has to: 1) dispute the debt before it will be considered valid; 2) obtain verification of the debt; and 3) request the name and address of the original creditor, if it is different from the current one. *See id.* Consumers have other rights under the act. Of significance to this lawsuit is a debt collector's obligation to stop communicating with a consumer once the consumer has notified the debt collector in writing to do so. *See* 15 U.S.C. § 1692c(c). After receiving such a notice, a debt collector may contact a consumer only to advise that collection activities are being terminated or to state that the creditor or collector intends to invoke specified remedies. *See id.* Like other rights provided by the act, this one need not be disclosed in the required validation notice. Aside from the validation notice, the only other affirmative disclosure obligation imposed by the act is found in § 1692e(11), which provides that debt collectors must state in all communications with consumers that the purpose of the communication is to collect a debt and that any information volunteered by the

---

1. Union Corporation is a subsidiary of defendant Transworld.

consumer will be used for this purpose. By contrast, under the Colorado analog to the FDCPA, collection agencies must inform Colorado consumers that they have rights virtually identical to those provided in 15 U.S.C. § 1692c(c). Unlike Colorado, Wisconsin does not impose disclosure obligations greater than those found in the FDCPA.

Defendant's attempt to accommodate these conflicting disclosure requirements in a single collection letter is the genesis of this lawsuit. According to plaintiff, defendant's practice violates 15 U.S.C. § 1692e because the omnibus letter implies falsely that only Colorado consumers have the right to tell a debt collector to stop contacting them. Defendant maintains that it was simply following the law, or laws; it made all of the disclosures required under the federal, Wisconsin and Colorado statutes.

■ The starting point for resolving this dispute is the so-called "unsophisticated consumer" standard. Courts determine whether a communication is false, misleading or deceptive from the perspective of an unsophisticated consumer. *See Jang v. A.M. Miller and Associates,* 122 F.3d 480, 483 (7th Cir.1997). This hypothetical person may be uninformed, naive, trusting and of below average sophistication but does not stand on the "the very last rung on the sophistication ladder." *See Gammon v. GC Services Limited Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). There is an element of objective reasonableness within the standard. *See id.*

To date, four district courts have ruled on the legality of the so-called "Colorado" letter, or one similar to it. *See White v. Goodman,* 41 F.Supp.2d 794 (N.D.Ill. 1998); *Jenkins v. Union Corp.,* 999 F.Supp. 1120; *Slotten v. Collections Unlimited, Inc.,* No. 96–C–920 (W.D.Wis. Feb. 26, 1997) (Shabaz, J.); *Brown v. ACB Business Services, Inc.,* No. 95–Civ. 10197, 1996 WL 469588 (S.D.N.Y. Aug. 16, 1996). In two cases, *Jenkins* and *Slotten,* the courts held that the letter violates § 1692e; in the other two, the courts found in favor of the defendants. Only *White v. Goodman* deserves brief mention. In this unpublished case, the court noted that slightly different versions of the Colorado letter have been circulated around the country. Unlike the letter in this case and in *Jenkins,* the letter before the court in *White* explained why the special Colorado disclosures appeared on the back. Specifically, this provision began by stating that "The State of Colorado requires that we furnish Colorado residents with the following information" and then discussed the right to cease communication. For reasons that will become clear in the next paragraph, this factual distinction is significant.

■ Defendant's letter invites confusion. On the front, it alerts readers to an important message on back, which turns out to be the name and address of the Wisconsin agency responsible for licensing debt collectors operating in the state. Two paragraphs down, the letter instructs Colorado consumers how to cease communication with defendant but no similar instructions are directed at Wisconsin residents. Without any explanation why the contents of the Colorado and Wisconsin messages are different, readers are left to draw their own conclusions. Conceivably, an unsophisticated consumer could attribute the differences between these messages as a function of the different disclosure requirements that exist under Colorado and Wisconsin law. However, an unsophisticated consumer will not necessarily appreciate the distinction between the existence of a right and a collection agency's obligation to disclose this right. The probability that this distinction will be lost on an unsophisticated consumer increases when, as here, the consumer is confronted with noticeably different disclosures and given no assistance in interpreting these differences correctly. In FDCPA parlance, an unsophisticated Wisconsin consumer could easily be misled into believing erroneously that if she had the rights provided in § 1692c(c), defendant would have told her so in the "important message," as it did for Colorado residents.

Defendant argues that this is an unreasonable inference to draw from its letter for two reasons. First, defendant sets up a conceptual analogy to show how there is no logical reason why a consumer would be confused by the letter. According to defendant, such an inference would require

the person who is told "set A includes X" to conclude that set A only includes X and that nothing is contained in set A. Thus, the statement "the chair is in the house" is unreasonably interpreted to imply "only the chair is in the house" or "the house only contains the chair." The statement "you have this right" is unreasonably interpreted to mean "you have *only* this right."

Def.'s Br. in Supp. of Summ.J., dkt. # 32, at 15. Under this reasoning, defendant contends, liability would be virtually limitless. Scenarios envisioned by defendant include the prospect that "debtors will sue TSI for falsely implying that TSI is only licensed by Colorado, Wisconsin, Tennessee and Minnesota when it is in fact also licensed by other states.... Debtors residing in states that give their residents state validation rights comparable to § 1692g(a) would sue TSI for misleading them into believing they had no such rights." *Id.*

Although I agree that an unsophisticated consumer would not interpret "the chair is in the house" to mean that the house contains nothing other than the chair, this has little if anything to do with the rule of logic invoked by defendant. Without even stepping through the front door or peeking in a window, the unsophisticated consumer in defendant's analogy would expect to find a good deal more than the lone chair. Unsophisticated consumers know that houses generally contain a variety of specific objects—beds, toilets, appliances, tables, and yes, even chairs. By contrast, it is a safe assumption that an unsophisticated consumer's knowledge of her rights under the federal and state debt collection laws is limited to what she is told by the collection agency in its dunning letters.

The second part of defendant's argument is framed in terms of "Congressional intent." By this, defendant means that the act limits disclosure to the narrow requirements of §§ 1692g(a) and § 1692e(11). Debt collectors are under no obligation to tell consumers about any of the other rights provided under the FDCPA. A finding that the letter violates § 1692e, defendant argues, would be the equivalent of imposing a disclosure obligation above and beyond what Congress saw fit to include the act. In other words, even if the letter is deceptive or misleading, defendant should not be held liable.

■ As an abstract matter, I agree that Congress did not intend liability would be premised solely on the failure of a debt collector to disclose more than it is obligated to under §§ 1692e(11) and 1692g(a). However, these disclosure requirements are not the only source of Congressional "intent" in the act and their limited scope does not mean, as defendant insists, "that Congress was willing to leave consumers in the dark about many of their rights." Dkt. # 32 at 9. Although Congress did not make debt collectors responsible for educating consumers about every relevant portion of the act, this does not mean that there are no situations in which a debt collector must disclose more than required by §§ 1692e(11) and 1692g(a). Congress also proscribed the "use of any false, deceptive, or misleading representation" to collect a debt. 15 U.S.C. § 1692e. It should come as no surprise that the potential for confusion increases when, as here, a debt collector attempts to reduce the fixed costs associated with its multi-state collection business by drafting a single letter for use in states with conflicting disclosure requirements. In this situation, § 1692 requires debt collectors to take affirmative steps to prevent consumers from being misled. Defendant admits that it failed to take such steps but insists that no harm was caused. This may be true but it is irrelevant. Liability under the FDCPA is strict. To obtain statutory damages, a plaintiff need prove only that the debt

collector violated the statute. *See Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.1997).

Defendant's fears of limitless liability and onerous new disclosure obligations are unfounded. There is an obvious way around this problem, namely, using a separate letter for each state. Defendant maintains that it would still be vulnerable to charges like the one brought by plaintiff if, for example, a Colorado letter is forwarded to someone who has relocated to Wisconsin. This is incorrect. Defendant's letter is misleading because it juxtaposes the Colorado language with the more limited disclosures required by other states and contains no explanation why this difference should not be interpreted in the wrong way. Another option available to defendant is use of the explanatory notice suggested by the district court in *Jenkins v. Union Corp.,* 999 F.Supp. at 1139 n. 13. I agree that this language is sufficient to help recipients interpret the multi-state letter correctly. For this reason, no letter received by plaintiff or any class member with the additional warning language constitutes a violation of the act. Because I find that the other letters violate § 1692e, there is no need to address plaintiff's contention that these same letters violate § 1692f.

 Defendant argues that its violation of § 1692e should be excused as a bona fide error under 15 U.S.C. § 1692k(c), which provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The language of § 1692k(c) places the burden on defendant to show both that its violation was unintentional and that it maintained procedures reasonably adapted to avoid the error. *See Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir.1997). In its third affirmative defense, defendant asserts that it acted in good faith and without the requisite intent. Plaintiff contends that this did not place her on notice that defendant intended to raise the bona fide error defense. Even if I could agree, plaintiff can hardly assert at this stage in the proceedings that the invocation of this defense has taken her by surprise. The parties discussed § 1692k(c) in their briefs on class certification. By waiting until now to assert that defendant has waived the bona fide error defense, plaintiff has herself waived any right to make this argument. *See Lander Co. v. MMP Investments, Inc.,* 107 F.3d 476, 480 (7th Cir. 1997) (waiver arguments are waivable).

Defendant contends that it made a bona fide error of law despite the procedures that it maintains to avoid such errors. According to defendant, it keeps abreast of changes in state and federal collection law by receiving materials published by a national debt collectors association. These materials are reviewed by defendant's president and other employees, who insure that defendant's activities are in compliance with the FDCPA. Defendant also emphasizes that its letters have been approved by the Wisconsin Banking Commission and that the word "Colorado" appears in bold letters above the Colorado disclosures, as suggested by the Colorado Collection Agency Board.

 Generally, the term "error" is limited to clerical mistakes, such as a minor numerical mistake in transposing numbers. *See, e.g., Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1032 (6th Cir.1992) ($10.00 discrepancy between amount actually owed and amount debt collector sought caused by clerical error). Some courts have held explicitly that § 1692k(c) does not excuse mistakes of law. *See Pipiles v. Credit Bureau Inc.,* 886 F.2d 22, 27 (2d Cir.1989); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 779 (9th Cir.1982). However, the Court of Appeals for the Seventh Circuit has suggested that this may be a viable defense. *See Jenkins v. Heintz,* 124 F.3d at 832 & n. 7.

 Even assuming that mistakes of law fall within § 1692k(c), this defense is

not available to defendant. It is dubious whether the guidance provided by the Colorado and Wisconsin agencies created some sort of safe harbor for defendant. These agencies enforce state law, not the FDCPA. Regardless, the Northern District of Illinois issued the *Jenkins* opinion on March 30, 1998, nearly two months before defendant sent its first letter to plaintiff. In light of this chronology, defendant's assertion that it made an innocent error of law rings hollow. The technical delays associated with overhauling defendant's letters fall well outside the parameters of § 1692k(c). Defendant chose to continue sending out letters it knew violated the law, perhaps hoping that *Jenkins* would be overturned on appeal or that it could implement the necessary changes before being subject to a fresh round of litigation. This was a business decision, not an "error."

### ORDER

IT IS ORDERED that plaintiff Mary B. Borcherding–Ditloff's motion for partial summary judgment is GRANTED and defendant Trasnworld Systems, Inc.'s motion for summary judgment is DENIED.