Allen W. HARTMAN and Kimberly M. Hartman, Khay Yang and Bee Yang, Patrick Gums and Shari Gums, Kelly Millard, Terry Reany and Tina Reany, Derrick Jones, Eric Sennholz, Michael Pipp and Kristine Pipp, Plaintiffs,

v.

MERIDIAN FINANCIAL SERVICES, INC., Defendant.

Nos. 01–C–0060–C, 01–C–0061–C, 01–C–0088–C, 01–C–0104–C, 01–C–0254–C, 01–C–0415–C, 01–C–0416–C, 01–C–0424–C.

United States District Court, W.D. Wisconsin.

March 11, 2002.

Mary C. Fons, Fons Law Office, Stoughton, WI, for Patrick Gums, Shari Gums, Allen W. Hartman, Kimberly M. Hartman, Kelly Millard, Kristine Pipp, Michael Pipp, Michael Pipp, Terry Reany, Tina Reany, Eric Sennholz, Bee Yang, Khay Yang.

De Vonna Joy, Consumer Justice Law Center, Muskego, WI, for Derrick Jones.

Tomislav Z. Kuzmanovic, Hinshaw & Culbertson, Milwaukee, WI, for Meridian Financial Services, Inc.

## OPINION AND ORDER

CRABB, District Judge.

These are civil actions for monetary relief that have been consolidated as case no. 01–C–0060–C. Plaintiffs contend that defendant Meridian Financial Services, Inc. undertook deceptive debt collection practices in connection with its attempt to collect money allegedly owed by plaintiffs for condominium timeshare interests. With the exception of Michael Pipp and Kristine Pipp, plaintiffs have asserted causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; the Wisconsin Consumer Act, Wis.Stat. § 427.104(1); and the North Carolina Debt Collection Statute, N.C.GenStat. § 58–70–110. The Pipps have asserted a cause of action under the FDCPA only. In an order dated August 28, 2001, this court dismissed plaintiffs' causes of action brought under the North Carolina Debt Collection Statute. Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

Presently before the court are plaintiffs' and defendant's cross-motions for summary judgment. Because I find that defendant violated the Fair Debt Collection Practices Act and Wisconsin Consumer Act, plaintiffs' motion for summary judgment will be granted and defendant's motion for summary judgment will be denied. Under the FDCPA, plaintiffs are entitled to a jury determination as to statutory damages. Trial on damages will go forward on April 29, 2002. After the amount of statutory damages under each act has

been determined, plaintiffs will be allowed to submit an itemized statement of attorney fees and costs incurred in bringing these actions and defendant will be allowed to file objections to the amount of fees and costs sought by plaintiffs.

From the proposed findings of fact and the record, I find the following material facts to be undisputed.

## UNDISPUTED FACTS

### A. *Background*

On July 15, 1999, Interval Resort and Financial Services, Inc. acquired defendant Meridian Financial Services, Inc. Before the acquisition, C. Wayne Kinser had owned both defendant and Peppertree Resorts, Ltd. Since the acquisition and at all times relevant to this lawsuit, defendant and Peppertree Resorts, Ltd. have had no common ownership, officers or employees. Peppertree Resorts, Ltd. is the parent company of Peppertree Resort Villas, Inc. (In their briefs and proposed findings of fact, plaintiffs and defendant often refer to "Peppertree" generally, making it unclear exactly which Peppertree entity they are discussing. For the purpose of deciding the pending motions, when plaintiffs or defendant refer to "Peppertree," I have construed the reference to mean the Peppertree companies collectively.)

Defendant identified itself as, "Meridian Financial Services, Inc.," a collection agency, on its North Carolina collection agency license renewal application for the period of July 1, 2001 to June 30, 2002. Under "trade name" within the application, defendant listed only itself; it did not list "Peppertree Resorts Ltd. Credit and Collection Department" as a name under which it collects debts.

Since 1989, defendant has regularly attempted to collect debts that are allegedly due another party and has engaged in no other business. As of January 2000, approximately 45% of defendant's business was made up of collections on behalf of Peppertree accounts; the remainder was devoted to collections on other accounts.

### B. *Plaintiffs' Contracts with Peppertree Resort Villas, Inc.*

Peppertree Resort Villas, Inc. sold each plaintiff a condominium timeshare interest at the "Peppertree at Tamarack" resort in Wisconsin Dells, Wisconsin. Peppertree Resorts Villas, Inc. sells timeshare interests regularly and deals in real property, services, money and credit. Each plaintiff purchased his or her timeshare interest (1) for personal, family or household purposes and not for business or commercial purposes; (2) under a land contract from Peppertree Resort Villas, Inc.; (3) in a single transaction, except for plaintiff Sennholz who purchased two timeshare interests in two transactions; and (4) by making a down payment and agreeing to make monthly payments on the contract.

The debt collection at issue arose from loan and maintenance fee debts on plaintiffs' timeshare interests. Plaintiffs' creditor is Peppertree Resort Villas, Inc. Defendant was not a party to any of the timeshare transactions, had no ownership in the alleged debts and never acquired the debts on its own or by assignment. A dispute arose between each plaintiff and Peppertree Resort Villas, Inc. and, as a result, plaintiffs retained legal counsel and stopped making payments.

Plaintiffs entered into one of two versions of the timeshare contracts. The two versions define "default" using slightly different language. The contracts issued to the Reanys, the Yangs, Jones and Sennholz use the following language:

13. DEFAULT: Buyer shall be in default under this Contract if he fails to pay on time, keep any promise, or fulfill any agreement or obligation contained herein or in any of the documents or

instruments referenced herein. In the event of a default in the payment of any principal or interest which continues for a period of more than fifteen (15) days following the specified due date, or in the event of a default in the performance of any other obligation under this Contract, either of which continues for a period of thirty (30) days following the Seller's written notice thereof, then the entire outstanding balance under this Contract shall become immediately due and payable in full, at Seller's option.

The contracts issued to the Gumses, the Hartmans, the Pipps and Millard contain the following definition of default:

7. DEFAULT: BUYER agrees that time is of the essence and in the event of a default in the payment of any principal or interest which continues for a period of more than 15 days following the specified due date or in the event of a default in performance of any other obligation of BUYER either of which continues for a period of 30 days following written notice thereof by SELLER (delivered personally or mailed by certified mail), then the entire outstanding balance under this contract shall become immediately due and payable in full, at SELLER'S option.

Defendant collected unpaid debts on behalf of Peppertree Resort Villas, Inc. for the timeshare land contract payments and on behalf of Peppertree Homeowners Association for maintenance fees.

### C. *Defendant's Contract with Peppertree Resorts, Ltd.*

Defendant entered into a contract with Peppertree Resorts, Ltd. in which it was to be Peppertree's "exclusive agent for the collection of unpaid debts." The contract provides that "[Peppertree Resorts, Ltd.], and its Affiliates agree to place all their delinquent loans and maintenance fee and club dues with [defendant] for collection" and that "delinquent loans shall mean any

loan whose payment is more than 11 days past due; and delinquent maintenance fee or club dues accounts shall mean any such account which is more than 60 days past due."

The debt collection contract provides that:

"[defendant] shall make no express or implied representation to debtors of [Peppertree Resorts, Ltd.] or any Affiliate that [defendant] occupies any relationship to [Peppertree Resorts, Ltd.] or any Affiliate other than that of an independent contractor. Nothing in this Agreement nor the relationship between the parties hereto shall be construed to create a partnership or joint venture.... [Peppertree Resorts, Ltd.] and its Affiliates hereby authorize [defendant] to use [Peppertree Resorts, Ltd.'s] or its Affiliate's name in all collection activities pursued by [defendant] on accounts placed which are between 11 and 60 days delinquent. In all other circumstances, [defendant] shall use its name and company letterhead in all contacts and transactions with debtors and other persons that may, in any way, be concerned with the Agreement."

Under the terms of the contract, defendant had "sole and exclusive authority and control over the methods and manner of performance" subject to being in "material compliance with all federal, state and local laws and regulations regarding debt collection."

After July 15, 1999, defendant attempted to collect debt from plaintiffs under its own name, Meridian Financial Services, Inc., and under the name "Peppertree Resorts Ltd. Credit and Collection Department." If a loan payment was past due by 11 to 60 days, defendant would attempt to collect the debt under the name "Peppertree Resorts Ltd. Credit and Collection Department." After 60 days, defendant

used its own name in its attempts to collect debts from plaintiffs. Defendant did not provide billing services other than debt collection for any of Peppertree's current accounts that were not in default.

Defendant communicated with Peppertree five to ten times daily. Defendant had 24–hour access to Peppertree's computers, which contained Peppertree's customer files. These files could be downloaded to defendant's computers. Defendant's employees did all past due collection on plaintiffs' accounts, whether under defendant's own name or under the name "Peppertree Resorts Ltd. Credit and Collection Department." All the collection activity done by defendant under the name "Peppertree Resorts Ltd. Credit and Collection Department" was done on defendant's premises. Defendant ordered and paid for the stationery it used to send collection letters under the name "Peppertree Resorts Ltd. Credit and Collection Department." Defendant paid for the post office box to which plaintiffs were to remit payment. Defendant attended monthly meetings with Peppertree Resorts, Ltd. and completed monthly, quarterly and annual reports for Peppertree Resorts, Ltd. The name "Peppertree Resorts Ltd. Credit and Collection Department" is not registered as a collection entity or any other type of entity.

### D. *Debt Collection*

#### 1. *Under Peppertree and Meridian name*

In 2000, defendant sent debt collection letters under the name "Peppertree Resorts Ltd. Credit and Collection Dept" to the Gumses on February 8 (form letter # 100); to the Hartmans on January 30(# 16), February 6(# 2), February 10 (# 100) and April 6 (# 100); to Jones on April 30(# 16), May 6(# 19), May 7(# 2), May 18(# 3) and June 1 (# 100–history log); to Millard on February 16(# 16) and February 24(# 2); to the Pipps on January 30(# 16) and February 6 (# 2–history log); to the Reanys on April 30(# 16); to Sennholz on January 30 (# 16–history log), February 6 (# 2–history log), February 17 (# 3–history log) and April 30(# 16); and to the Yangs on January 30(# 16). Plaintiffs did not produce all of these letters; defendant's history logs show that it sent those letters not produced. (Defendant does not dispute that its history logs show that it sent these letters but it disputes that plaintiffs actually received them.) None of the letters identified defendant by its name, Meridian Financial Services, Inc. Defendant never sent any validation notices to plaintiffs on the debts it attempted to collect from plaintiffs under the name "Peppertree Resorts Ltd. Credit and Collection Department."

In 2000, defendant sent debt collection letters under its own name, Meridian Financial Services, to the Gumses on February 19 (form letter # 52); to the Hartmans on April 16(# 52); to Jones on March 19(# 50), April 4 (# 52–history log), April 19 (# 52–history log), May 2 (# 181), May 19(# 45), June 18 (# 216–history log), June 20 (# 50–history log), July 4 (# 56–history log), July 14 (# 38–history log), July 20 (# 52–history log), August 13 (# 217–history log) and August 19 (# 45–history log); and to the Pipps on March 19 (# 50–history logs), April 4 (# 56–history log), April 19(# 52) and May 2 (# 181). Plaintiffs did not produce all of these letters; defendant's history logs show that it sent those letters not produced. (Defendant does not dispute that its history logs show that it sent these letters but it disputes that plaintiffs actually received them.)

Although the Pipps retained their April 19 and May 2 letters from defendant, they recall discarding other letters that defendant sent them.

## 2. *Notice of representation*

On February 18, 2000, plaintiffs' counsel faxed a letter to Peppertree Resorts, Ltd.'s counsel, stating that plaintiffs were represented by counsel, that all debts reported to collection agencies should be reported as disputed and that Peppertree should advise its collectors to cease communication with plaintiffs. Defendant produced a copy of this letter at a December 17, 2001 deposition. The letter had two fax date stamps, February 19 and February 25, 2000, across the top of it.

The Hartmans' debtor history log (kept by defendant) shows a February 5, 2000 entry that states, "MRS SAID THAT SHE IS NOT GOING TO PAY THIS GOING TO ATTY." A February 12, 2000 entry states, "MRS SAID THAT SHE IS NOT GOING TO PAY—PART OF CLASS ACTION WITH MARY ATTY." A February 29, 2000 entry states, "HARTMAN, ALLEN W. & KIMBERLY M. C/O FONS LAW OFFICE STOUGHTON WI 53589." A March 22, 2000 entry states, "HLD–LAWSUIT." On April 5, 2000, defendant took the Hartman account off hold an placed it as an "active" account. On April 6, 2000, defendant sent a collection letter to the Hartmans under the Peppertree name and on April 16, 2000, it sent them a letter under defendant's name.

The Gumses' debtor history log shows a February 17, 2000 entry that states, "DTR SD THAT THEY HAVE ATY MARY FONS REPRESENTING THE # 608–873–1270." Plaintiffs' counsel's telephone number is 608–873–1270. On February 24, 2000, a hold was placed on the Gumses' account so that no more communications would be made with them. Putting an account on hold prevents any further debt collection letters from being sent to the debtor.

Jones' debtor history log shows a July 29, 2000 entry states, "DERRICK C/O FONS LAW OFFICE STOUGHTON WI 53589." On July 29 and August 13, 2000, defendant sent collection letters to Jones.

On or about February 7, 2000, plaintiff Kristine Pipp notified defendant that she and her husband were represented by counsel. The debtor history log states, "MRS SD THY R INVLD IN LAW SUIT AGNST PT LAWYR MARY CATHERINE FONS 608–873–1270." Defendant's records indicate that collection letters were sent to the Pipps on March 19, April 4, April 19 and May 2, 2000. Defendant continued to call the Pipps at home after they had been notified that they were represented by counsel.

On January 28, 2000, defendant telephoned the Yangs' residence and the debtor history log indicates that "MRS SD ALL CALLS TO ATTORNEY FONS." Defendant continued to call the Yangs after this notification.

## 3. *Form letter # 56*

Form letter # 56, which was sent to the Pipps and Jones, reads as follows:

> Your delay in payment caused you to be placed with our agency for collections. Your continued disregard can only cause future collection effort on our part.
>
> Keep in mind that we may be authorized by our client to report your account to a credit reporting agency. If this is so, we will report your account approximately 45 days from date of placement. This allows us to address all disputed accounts in accordance with your 30–day validation notice which was previously sent by our office. We ask that you contact us before this period expires to verify our credit reporting process.

## E. *Finance Charges*

Plaintiffs' finance charges for all of the loans are as follows: the Hartmans, $7,547.00; the Yangs, $10,064.60; the Gumses, $3,188.16; Millard, $3,894.54; the

Reanys, $4,112.53; Jones, $3,704.17; Sennholz, $12,586.80; and the Pipps, $3,524.29.

## OPINION

### A. *Sufficiency of the Complaints*

At the outset, it is necessary to determine whether plaintiffs can pursue their § 1692c claims that defendant continued to communicate with plaintiffs after learning that they were represented by counsel. In their complaints, plaintiffs allege that defendant's "debt collection communications" violated "at least" five enumerated provisions of the FDCPA, without referring explicitly to § 1692c. In the next separately numbered paragraph, plaintiffs alleged that "defendant's collection efforts have resulted in additional violations of the FDCPA." (Although there are a number of complaints or amended complaints in this consolidated lawsuit, each is nearly identical in this respect.) Plaintiffs attached copies of defendant's collection letters to their complaints.

Defendant argues in a footnote in its brief that plaintiffs did not plead their § 1692c claim in their complaints and therefore are barred from proceeding on it. In support of its position, defendant points to an order in this case in which the magistrate judge disallowed expenses and costs for discovery on items that fell within alleged violations of § 1692c after finding that plaintiffs had not alleged § 1692c violations in their complaints. *See* Order entered Jan. 9, 2002, dkt. # 99, at 4. In response, plaintiffs argue that the magistrate judge's order addressed discovery expenses only, not the substantive issue of the adequacy of the pleadings. Moreover, plaintiffs point out, in another order entered less than a week later, the magistrate judge denied defendant's motion to strike these portions of plaintiff's motion for summary judgment relying on § 1692c pleading deficiencies. *See* Order entered Jan. 15, 2002, dkt. # 103, at 2. In the

magistrate judge's second order, he held that "without striking anything, I note that no plaintiff in any case can obtain summary judgment on a claim not raised in their complaint." *Id.* The magistrate judge then instructed defendant to "file a written response to plaintiff's motion. If the motion is as deficient as [defendant] claims, then this should not be too onerous a task." *Id.* Instead of heeding the magistrate judge's instruction to brief the § 1692c pleading issue, defendant merely included a footnote citing only the January 9 order and chiding plaintiffs for devoting 13 pages of their brief to this issue. *See* Dft.'s Resp. to Plts.' Mot. for Summ.J., dkt. # 109, at 2 n. 2. Because the January 9 order was limited to discovery expenses and the January 15 order denied defendant's motion to strike on the substantive issue of § 1692c pleading deficiencies, it is clear that the sufficiency of the pleadings has not yet been decided by this court. Therefore, I turn to the issue whether plaintiffs' complaints were sufficient to encompass the § 1692c violations they argued in their motion for summary judgment.

Under the federal rules, a complaint need make only "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The complaint "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Anderson v. Simon,* 217 F.3d 472, 474 (7th Cir.2000) (complaint need not set forth all relevant facts or recite law). More important, a complaint "may not be dismissed unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" *Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81

L.Ed.2d 59 (1984)); *see also Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) ("a complaint is not required to allege all, *or any,* of the facts logically entailed by the claim") (emphasis in original). In this case, plaintiffs alleged in their complaints that defendant's collection communications violated the FDCPA. Plaintiffs' proposed facts in support of their motion for summary judgment show that defendant contacted them after it knew they were represented by counsel (a § 1692c violation). These facts are consistent with plaintiffs' complaint that defendant's debt collection communications violated the FDCPA. They comport with *Albiero,* 122 F.3d at 419. *See also Swierkiewicz v. Sorema,* —— U.S. ——, 122 S.Ct. 992, 997, —— L.Ed.2d ——, at —— (2002) (discussing pleading requirements and noting that "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). Had plaintiffs briefed the same allegations (with supporting affidavits) in response to a motion to dismiss for failure to state a claim, plaintiffs' alleged § 1692c violations would have survived such a motion. *See Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir.1999) (discussing differences between complying with Rule 8(a) and surviving dismissal under Rule 12(b)(6)).

Because the defendant did not brief the issue as suggested by the magistrate judge, it is impossible to discern defendant's reasoning behind its assertion that the complaints are deficient with respect to § 1692c violations. Nevertheless, it is important to point out that plaintiffs were not required to provide even a non-exhaustive list of specific FDCPA code violations in order to satisfy the notice pleading requirements under Fed.R.Civ.P. 8(a)(2). *See Bennett,* 153 F.3d at 518 (complaint need not identify legal theories, this is *"the difference between notice pleading and*

code pleading") (emphasis in original). Moreover, the fact that plaintiffs provided an explicitly non-exhaustive list of alleged FDCPA violations does not otherwise defeat their compliance with Rule 8(a). *See id.* ("Complaints need not plead law or match facts to every element of a legal theory.").

The Court of Appeals for the Seventh Circuit has held repeatedly that "plaintiffs don't have to file long complaints, don't have to plead facts, [and] don't have to plead legal theories." *Kirksey,* 168 F.3d at 1041 (collecting cases). Plaintiffs stated explicitly that defendant violated "at least" the enumerated FDCPA code provisions and, moreover, that "defendant's collection efforts have resulted in additional violations of the FDCPA." If defendant believed that plaintiffs' explicit references to other possible FDCPA violations (other than those specifically enumerated) were vague or ambiguous, it was free to file a motion for a more definite statement under Fed.R.Civ.P. 12(e) or serve contention interrogatories on plaintiffs. Because plaintiffs gave defendant fair notice that its debt collection communications allegedly violated the FDCPA, I conclude that plaintiffs have met the notice pleading requirements under Fed.R.Civ.P. 8(a)(2) with respect to possible § 1692c violations.

### B. *Fair Debt Collection Practices Act*

Under the Fair Debt Collection Practices Act, debt collectors are prohibited from using "false, deceptive, or misleading ... means in connection with the collection of any debt." 15 U.S.C. § 1692e. To fall under the FDCPA, the funds at issue must constitute "debt" and the challenged activity must have been conducted by a "debt collector." *See generally* 15 U.S.C. § 1692a *et seq.; see also Skerry v. Massachusetts Higher Educ. Assist. Corp.,* 73 F.Supp.2d 47, 51 (D.Mass.1999).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). It is undisputed that the debts at issue in this case arose from loan and maintenance fees on condominium timeshare interests purchased by plaintiffs for personal, family or household purposes. Therefore, the outstanding payments are consumer debt governed by the FDCPA.

### 1. Debt collector

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendant falls within the general definition of debt collector. It is undisputed that defendant was attempting to collect debts that plaintiffs allegedly owed to Peppertree Resort Villas, Inc. The critical disputed issue is whether defendant falls within one of the FDCPA's enumerated exceptions to the general definition of "debt collector."

### 2. Debt collector exemptions

#### a. In-house debt collector

Defendant argues that when it attempted to collect debts from plaintiffs under the name "Peppertree Resorts Ltd. Credit and Collection Department," it was acting as Peppertree's in-house debt collector, not as a third-party debt collector under the FDCPA. Defendant's argument is unpersuasive for several reasons. First, the statute exempts *"any officer or employee of the creditor* while, in the name of the creditor, collecting debts for such creditor" from the statutory definition of "debt collector." 15 U.S.C. § 1692a(6)(A) (emphasis added). Plaintiffs' creditor is Peppertree Resort Villas, Inc. Although before July 15, 1999, there was common ownership between defendant and Peppertree Resorts Ltd. (the parent company), at the time of the attempted debt collections at issue defendant did not have any ownership, employees or officers in common with Peppertree Resort Villas, Inc. or Peppertree Resorts, Ltd. Therefore, defendant does not fall within the § 1692a(6)(A) exception to the definition of debt collector.

Second, the affiliation exemption, 15 U.S.C. § 1692a(6)(B), exempts "any person while acting as a debt collector for another person, both of whom are related by common ownership *or affiliated by corporate control,* if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." (Emphasis added.) In this case, it might be arguable that defendant was affiliated by corporate control. Peppertree exerted some influence over defendant, as illustrated by their numerous daily communications, access to computer information and periodic reporting. Nevertheless, to fall within the § 1692a(6)(B) exception, the party collecting on behalf of another cannot be in the principal business of collecting debts and can collect debts only for the creditor with which it is affiliated. In this case, it is undisputed that defendant's business is debt collection only. As of January 2000, the Peppertree accounts represented only a portion (approximately 45%) of defendant's debt collection business. Therefore, defendant does not fall within the § 1692a(6)(B) exception to the definition of debt collector.

#### b. Pre-collection billing services

Defendant argues that its relationship with Peppertree differed depending

on how many days a debtor's payment was overdue. Specifically, if a debt was 11 days or more overdue, defendant was acting as a third-party debt collector, but if a debt was overdue by fewer than 11 days, defendant was providing "pre-collection billing services." Defendant cites *Franceschi v. Mautner–Glick Corp.*, 22 F.Supp.2d 250 (S.D.N.Y.1998), in support of its contention that pre-collection billing services are exempt from the FDCPA. In *Franceschi,* a landlord entered into a contract with a managing agent in which the managing agent would enter into leases and collect rent on behalf of the landlord. *Id.* at 255. Both the management agreement (the contract between the managing agent and landlord) and the rental agreement (the contract between the landlord and debtor tenant) stated explicitly that the managing agent had full responsibility for collecting all current and past due rents. *Id.; see also Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F.Supp. 1122, 1128 (S.D.W.Va.1990) (creditor may use name other than its own when dealing with debtor "as long [as] it has consistently dealt with such debtor since the beginning of the credit relationship at issue under such name"). Therefore, the court held that the managing agent was not a debt collector under the FDCPA because the tenant had been aware from the time he had entered into the lease that the managing agent was acting on behalf of the landlord. *See Franceschi,* 22 F.Supp.2d at 255.

Because the contracts in *Franceschi* differ in relevant ways from the contracts in this case, I am unpersuaded that the "pre-collection billing services" provided by defendant are exempt from the FDCPA. For example, in this case (1) the contract between each plaintiff and Peppertree Resort Villas, Inc. does not refer to defendant in any way; (2) plaintiffs' contracts are with Peppertree Resort Villas, Inc. (the subsidiary) and defendant's contract is with a different entity, Peppertree Resorts, Ltd. (the parent); and (3) the contract between defendant and Peppertree Resorts, Inc. states that defendant collects on Peppertree's delinquent accounts only (not current accounts as in *Franceschi* ) and that defendant shall represent its relationship (with Peppertree) to debtors as an "independent contractor."

c. Debt not in "default"

Under the FDCPA, the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which *was not in default at the time it was obtained* by such a person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Defendant argues that this provision provides another ground for exemption. It maintains that plaintiffs' debts were not in default at the time it obtained those debts and, therefore, it is not a debt collector under the FDCPA.

It is undisputed that defendant did not service any of Peppertree's current accounts; it serviced only those accounts that showed a missing payment. In other words, if a Peppertree debtor paid all of its payments early or on time, then the debtor would never receive correspondence from defendant under its own name or the name "Peppertree Resorts Ltd. Credit and Collection Department." It is also undisputed that under the terms of plaintiffs' contracts with Peppertree Resort Villas, Inc., the debtor was in default if he or she failed to make a payment by its due date. Therefore, the threshold issue is whether a late payment is a default under the FDCPA in light of the explicit terms of plaintiffs' contracts. In other words, the question is whether "default" under the FDCPA means something other than "de-

fault" as it is defined in plaintiffs' contracts.

Defendant argues that although it was attempting to collect late payments (what it terms as "pre-collection billing services") under the name "Peppertree Resorts Ltd. Credit and Collections Department," it did not "consider" these late payments as being in default. Both parties acknowledge that the FDCPA does not define default. To fill the gap, defendant points to several Federal Trade Commission informal staff letters in support of its position that a late payment does not constitute a default under the FDCPA. For example, defendant cites *de Mayo, FTC Informal Staff Letter,* May 1, 2000, asserting that it stands for the proposition that a consumer is not in default when he or she misses a payment and cites *Goeringer, FTC Informal Staff Letter,* September 15, 1995, asserting that the FDCPA does not apply to the collection of debts that are not in default. Notwithstanding the fact that these FTC letters are not binding on this court (or, for that matter, on the FTC itself), these letters in no way enhance defendant's position. In *de Mayo,* the FTC stated that:

> the [debt-not-in-default] exemption was aimed at entities such as mortgage servicers that obtain debts as soon as the debts are incurred and are primarily in the business of accepting timely payments from consumers.... Whether a creditor "consider[s] a debt in default" has no bearing on whether the debt is truly in default.... Nothing in the FDCPA indicates that Congress intended a creditor's business decisions to determine whether a consumer benefits from the statute's protections. Thus, a collector cannot avoid the FDCPA's coverage by having its creditor/client wait until after accounts have been transferred to the collector before labeling the accounts "in default" or charging the accounts off.

*de Mayo,* at <www.ftc.gov/os/statutes/fdcpa/letters/demayo.htm>. In *Goeringer,* the facts were essentially the same as in *de Mayo.* The party serviced the loan when the accounts were timely and before they were overdue. *See Goeringer,* at <www. ftc.gov/os/statutes/fdcpa/letters/goeringer. htm>. In this case, defendant obtained the debts when they were overdue rather than when the contract was entered into or when the accounts were still timely as in *de Mayo* and *Goeringer.*

Defendant argues that under Peppertree's contracts with plaintiffs, an account was not in default at 11 days old (when defendant took over the debt) and, moreover, that according to defendant's president, Gregory Shepard, defendant does not "consider" an account to be in default until a payment has been missed, notice has been sent giving debtor 30 days to cure and debtor fails to cure. Unfortunately for defendant, plaintiffs' contracts do not coincide with its beliefs. To the contrary, plaintiffs' contracts provides that a buyer is in default "if he fails to pay on time" and "time is of the essence and in the event of a default in payment of any principal or interest which continues for a period of more than 15 days," seller may begin the necessary steps to effectuate the acceleration clause. It is true that defendant's contract with Peppertree Resorts Ltd. states that "[f]or purposes of this agreement, delinquent loans shall mean any loan whose payment is 11 days past due" but that language does not affect the terms of plaintiffs' contracts. In any event, as the FTC advised in *de Mayo,* the fact that a creditor or third-party debt collector "considers" a debt to be in default has no bearing on whether the debt is truly in default.

Defendant also argues that this court should use the definition of default that the court used in *Skerry,* 73 F.Supp.2d at 47.

The court held that the guarantor of a student loan was not a debt collector under the FDCPA even though it had obtained the loan after it had been overdue for 90 days. *Id.* at 51. Noting that the FDCPA does not define default, the court turned to the Federal Family Education Loan Program's definition of default because the debt at issue was a federally guaranteed student loan, which falls under the auspices of the Federal Family Education Loan Program as part of the Higher Education Act. *Id.* at 50 n. 1, 51 (under FFELP, loan is in "default" after overdue for 180 days and "delinquent" when debtor fails to make payment on due date). As its name implies, the Federal Family Education Loan Program has no connection to the timeshare condominium loans at issue in this case. For that reason, it makes no sense to substitute its definition of default for that of the contract.

Defendant argues that the "parties" did not intend that the account would be in default the moment a payment was missed. Even ignoring the fact that a court does not look beyond the terms of an unambiguous contract, *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir.1993), I find defendant's argument without merit. Presumably, the "parties" that defendant refers to are the parties to the original contract, namely, plaintiffs and Peppertree Resort Villas, not defendant. However, defendant does not offer a modicum of evidence to support its theory that this is not what the parties intended. Instead, defendant proffers its own third-party speculation as to the original parties' intent even though it is undisputed that it was not a party to the original contracts or transactions. Defendant's conjecture as to the parties' intent regarding the meaning of default is undercut by the acceleration clause found within the same paragraph of the contract:

In the event of a default in payment of any principal or interest which continues for a period of more than fifteen (15) days following the specified due date . . . which continues for a period of thirty (30) days following [Peppertree Resort Villas, Inc.'s] written notice thereof, then the entire balance under this Contract shall become immediately due and payable in full, at [Peppertree Resort Villas, Inc.'s] option.

In the acceleration clause, the parties agreed that defendant was required to provide written notice followed by a 30–day period to cure before the entire balance remaining would accelerate and become due. If the parties had the foresight to include a 30–day notice-and-cure period as to the acceleration clause, it is unlikely they would not include a similar 30–day period as to default resulting from late payments if that had been what they intended.

The terms of the contract between each plaintiff and Peppertree Resort Villas, Inc. are clear: plaintiff is in default when he or she fails to make a payment by its due date. Therefore, defendant's attempt to collect late payments does not fall within the § 1692a(6)(F)(iii) exception to the definition of debt collector. As an entity falling within the general definition of debt collector but not falling within any enumerated exemption, defendant is a debt collector subject to the provisions of the FDCPA.

### 2. *Violations of the FDCPA*

#### a. False name and bona fide error defense

Defendant's arguments focus primarily on its contention that it is not subject to the FDCPA because it is not a "debt collector." However, defendant argues alternatively that even if its conduct is governed by the FDCPA, any violation it may have committed was unintentional and a bona fide error. *See* 15 U.S.C. § 1692k(c).

Although defendant states "any violation" was unintentional, it asserts a bona fide error defense as to only two of the alleged violations. Defendant argues that its conduct is a bona fide error because it was acting in the good faith belief that (1) it was Peppertree's in-house collection department and (2) it was not attempting to collect debts that were in default.

■ Under the FDCPA, a debt collector "may not be held liable in any action under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). Bona fide error is an affirmative defense. Therefore, defendant has the burden of proving (1) that the violation was unintentional and (2) that it maintained reasonable procedures to avoid such error. *See Borcherding–Dittloff v. Transworld Systems, Inc.,* 58 F.Supp.2d 1006, 1012 (W.D.Wis.1999) ("The language of § 1692k(c) places the burden on defendant to show both that its violation was unintentional and that it maintained procedures reasonably."). The term "error" does not include mistakes of law. *See Patzka v. Viterbo College,* 917 F.Supp. 654, 659 (W.D.Wis.1996). "Generally the term 'error' is limited to clerical mistakes, such as a minor numerical mistake in transposing numbers." *Id.* (citing *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1032 (6th Cir.1992)).

■ Under the FDCPA, a debt collector is obligated to use its own name when corresponding with a consumer. *See* 15 U.S.C. 1692e(14) ("The following conduct is a violation of [the FDCPA] ... [t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."). Defendant cites two cases in support of its position that it was acting in the

good faith belief that it was Peppertree's in-house collection department and that the debts were not in default. In *Jenkins v. Heintz,* 124 F.3d 824, 832 (7th Cir.1997), a debt collector attempted to collect on a defaulted loan, not knowing that the debt included "force placed" insurance premiums that were not authorized under the loan agreement. In *Heintz,* the court concluded that the debt collector could rely on the creditor's representations that the charges were authorized under the contract and was not required to independently investigate. *Id.* at 828. In *Jenkins v. Union Corp.,* 999 F.Supp. 1120, 1141 (N.D.Ill.1998), the creditor referred a debt to its debt collector that included an unauthorized $25 service fee. The court concluded that attempting to collect the $25 was a bona fide error because the debt collector advised its clients (the creditors) in writing to submit only charges that they were legally entitled to receive. *Id.* The holdings in *Heintz* and *Union Corp.* have no application to this case. Defendant was not trying to collect a debt that it had been misled into thinking was legally subject to collection. Rather, it was trying to collect debt under the false name "Peppertree Resorts Ltd. Credit and Collection Department." This is not a clerical error. Defendant is mistaken as a matter of law, not of fact, that it was performing Peppertree's "in-house billing services" and that the accounts it handled were not in default. Moreover, defendant does not provide evidence that it had in place relevant procedures reasonably designed to avoid these so-called errors, although such a showing is a necessary prong of its bona fide error defense. Instead, defendant offers a laundry list of various employee training and instruction procedures, none of which is relevant to its in-house collection posture or its assessment of accounts considered not to be in default.

As plaintiffs point out, if the bona fide error defense were interpreted as broadly as defendant suggests it should be, then every debt collector could avoid the FDCPA by simply asserting that it believed its offending conduct did not violate the Act. *See Bawa v. Bowman, Heintz, Boscia & Vician,* 2001 WL 618966, at \*4 (S.D.Ind. May 30, 2001) (bona fide error defense does not shield those who simply misunderstand obligations imposed by FDCPA). In this case, it is not a bona fide error for defendant to believe it is providing in-house billing services or to consider the accounts it services not to be in default.

 Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). It is undisputed that each plaintiff received collection notices from defendant under the false name "Peppertree Resorts Ltd. Credit and Collection Department." Because plaintiffs have shown that defendant violated the FDCPA with respect to each of them, plaintiffs' motion for summary judgment as to their FDCPA claim will be granted and defendant's motion will be denied.

Although finding one violation is enough to grant summary judgment in favor of plaintiffs as to liability, the number of violations is used to determine statutory damages up to a maximum of $1000. *See* 15 U.S.C. § 1692k(b)(1) (in determining amount of liability in FDCPA action, "the court shall consider, among other relevant factors ... the frequency and persistence of noncompliance by the debt collector.") Therefore, in order to provide a basis for determining statutory damages, I will address plaintiffs' other allegations of FDCPA violations.

### b. Ceasing communication with represented debtors

 Under the FDCPA, "[i]f the consumer notifies the debt collector in writing that ... the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer, except [with respect to three specific situations]." 15 U.S.C. 1692c(c). Moreover, the FDCPA provides that:

> Without the prior consent of the consumer given directly to the debt collector ... a debt collector may not communicate with a consumer in connection with the collection of debt ... if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time ... or unless the attorney consents to direct communication with the consumer.

15 U.S.C. 1692c(a)(2).

On February 18, 2000, plaintiffs' counsel faxed a letter to two Peppertree lawyers (one of whom was Peppertree's in-house counsel), stating that plaintiffs were represented by counsel and instructing Peppertree to have its debt collectors cease communicating with plaintiffs. It is undisputed that defendant had knowledge of the contents of the letter before December 17, 2001, because it produced a copy of the letter at a deposition taken that day. The question is when defendant had knowledge of the letter's contents. It is clear that at some point between February 18, 2000 and December 17, 2001, defendant had received the letter and, at that point, had knowledge that plaintiffs were represented by counsel. Plaintiffs point out that the copy of the letter defendant produced had two fax date stamps,

February 19 and February 25, 2000. Plaintiffs argue that the February 19 date stamp was added to the letter when plaintiffs' counsel faxed the letter to Peppertree's counsel, and the February 25 date stamp was added when Peppertree's in-house counsel faxed the letter to defendant. However, this is only conjecture. The date of defendant's knowledge is question of fact that cannot be settled in a motion for summary judgment.

Nevertheless, it is undisputed that some plaintiffs notified defendant directly that they were represented by counsel as evidenced by defendant's own history logs. The Hartmans notified defendant that they were represented by counsel on February 5, 2000; the Gumses, on February 17, 2000; Jones, on July 29, 2000; and the Pipps, on February 7, 2000. Subsequent to these notifications, defendants attempted to collect debt both under its own name and under the name "Peppertree Resorts Ltd. Credit and Collection Department," in violation of the FDCPA. Defendant sent collection notices to the Hartmans and the Pipps four times each; Jones three times; and the Gumses once. The Pipps also received an unspecified number of telephone calls from defendant. In addition, the debtor history logs indicates that as of January 28, 2000, defendant knew that the Yangs were represented by counsel and, nevertheless, called them at home. These communications violated § 1692c(a)(2).

c. Validation notices

■ Under the FDCPA, a debt collector must send "validation" notices to the consumer within five days of its initial contact with the consumer and provide the consumer with certain enumerated information. *See* 15 U.S.C. § 1692g. It is undisputed that defendant did not send out validation notices when it attempted to collect debt under the name "Peppertree Resorts Ltd. Credit and Collection Depart-

ment." As a result, defendant violated this provision as to each plaintiff.

d. False, deceptive or misleading representations

■ Because I have concluded that defendant violated § 1692e by sending communications to plaintiffs in an attempt to collect debt under the false name "Peppertree Resorts Ltd. Credit and Collection Department," I will not reexamine those same communications for other alleged false, deceptive or misleading representations. One false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation. However, plaintiffs allege that defendant used false, deceptive or misleading representations in form letter # 56 when it attempted to collect debt under its own name (as opposed to the Peppertree name). Therefore, I will examine this letter to determine whether it contains any false, deceptive or misleading representations. *See* 15 U.S.C. § 1692e.

■ Courts determine whether a debt collection communication is false, misleading or deceptive from the perspective of an "unsophisticated consumer." *See Borcherding–Dittloff v. Transworld Systems, Inc.,* 58 F.Supp.2d 1006, 1010 (W.D.Wis. 1999); *Jang v. A.M. Miller and Associates,* 122 F.3d 480, 483 (7th Cir.1997). This hypothetical person may be uninformed, naive, trusting and of below average sophistication but does not stand on "the very last rung on the sophistication ladder." *Gammon v. GC Services Limited Partnership,* 27 F.3d 1254, 1257 (7th Cir. 1994). There is an element of objective reasonableness within the standard. *See id.*

■ The relevant portion of form letter # 56 reads as follows:

Keep in mind that we may be authorized by our client to report your account to a credit reporting agency. If this is so, we will report your account approximately 45 days from date of placement. This allows us to address all disputed accounts in accordance with your 30–day validation notice which was previously sent by our office. We ask that you contact us before this period expires to verify our credit reporting process.

The letter is devoid of any further explanation of the term "date of placement." Plaintiffs argue that this letter (sent to the Pipps and Jones) is confusing and misleading because, among other things, there is no way for the consumer to know what date is the "date of placement" and, therefore, the consumer cannot count back "approximately" 45 days from that date to conclude when defendant will report the consumer's account to credit reporting agency. I agree that this language is confusing and misleading and violates 15 U.S.C. § 1692e.

3. Summary of FDCPA violations

Plaintiffs have shown that defendant committed nine FDCPA violations against Jones; eight against the Hartmans; seven against the Pipps; three against the Yangs, the Gumses, and Millard; and two against the Reanys and Sennholz. Moreover, if a factfinder concludes that defendant had knowledge as of February 25, 2000, that plaintiffs were represented by counsel, then plaintiffs will have established one additional § 1692c violation against the Reanys and Sennholz and 13 additional violations against Jones.

C. *Wisconsin Consumer Act*

1. *Scope of the act*

The Wisconsin Consumer Act applies to "the collection of obligations arising from consumer transactions." Wis.Stat. § 427.102. The term "debt collector" is defined under the act as "any person en-gaging, directly or indirectly, in debt collection ..." Wis.Stat. § 427.103(3). The term "debt collection" is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer." Wis. Stat. § 427.103(2).

As it did with respect to the FDCPA allegations, defendant argues that it is not a "debt collector" because it was performing in-house billing services and was collecting debt that was not in default. Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector. Defendant argues that because there are no exceptions to the general definition of debt collector under the Wisconsin Consumer Act, this court should construe the term debt collector in a manner consistent with the FDCPA. It is beyond this court's authority to do so. In our tripartite form of government, it is the legislative branch that drafts and amends statutes, not the judiciary.

■■■■ Defendant argues in a conclusory manner that there is no evidence that the transactions between each plaintiff and Peppertree Resort Villas, Inc. were "consumer transactions" or that plaintiffs were "customers" under the Wisconsin Consumer Act. The term "consumer transaction" is defined as "a transaction in which one or more of the parties is a customer for purposes of the transaction." Wis.Stat. § 421.301(13). "Customer" is defined as "a person other than an organization ... who seeks or acquires real or personal property, services, money or credit for personal, family, household or agricultural purposes." Wis.Stat. § 421.301(17). Each plaintiff has submitted an affidavit, averring that he or she purchased his or her timeshare condominium interest for personal, family or household purposes and

not for business or commercial purposes. These portions of the affidavits arc uncontroverted. Moreover, each plaintiff (1) entered into the contract in his or her own name and not the name of an organization; (2) acquired an interest in real property; and (2) was extended credit by Peppertree Resort Villas, Inc. Therefore, there is sufficient evidence in the record that these were "consumer transactions" and that plaintiffs were "customers" as those terms are defined in the Wisconsin Consumer Act.

Defendant contends that there is no evidence that Peppertree Resort Villas, Inc. is a "merchant" under the act or that plaintiffs' contracts involved "an agreement to defer payment" as required under Wis.Stat. § 427.104(1). The term "merchant" is defined as "a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a customer transaction. The term includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and an assignee of or successor to such person." Wis.Stat. § 421.301(25). Plaintiffs' contracts provide the necessary evidence. They show that Peppertree Resort Villas, Inc. deals regularly in real property and that the contracts also in-. clude the loan and financing terms of the transaction, which is an agreement to defer payment.

As a final argument, defendant contends (in the last substantive paragraph of its reply brief only) that the timeshare interests are not real property interests under Wis.Stat. § 707.02 and, as a result, its conduct is not governed by the Wisconsin Consumer Act. This argument is unpersuasive for several obvious reasons. First, the contracts state that the seller "does hereby agree to sell and con-vey ... certain *real property*." (Emphasis added.) Second, under Wisconsin law, a "time-share estate" is defined as "[a] grant of an estate in a unit conferring the right of possession during a potentially infinite number of separated periods creates a fee simple absolute," Wis.Stat. § 707.03(1), and that "[e]ach time-share estate constitutes for all purposes a separate estate in *real property,*" Wis.Stat. § 707.03(2) (emphasis added). Plaintiffs' contracts confer an infinite number of separated periods and, therefore, create a fee simple absolute timeshare estate, which is defined as an interest in real property. Third, even if plaintiffs' timeshare interests were not interests in real property, defendant's conduct falls under the Wisconsin Consumer Act for the independent reason that Peppertree Resort Villas, Inc. deals regularly in extending credit to consumers, as exemplified by its financing of the timeshare loans in each transaction in this case. *See* Wis.Stat. §§ 421.301(25) and 427.103(2).

2. *Violations of the Wisconsin Consumer Act*

Defendant does not argue the substantive merit of any of plaintiffs' alleged violations or even a bona fide error defense. Nevertheless, in a motion for summary judgment, plaintiffs still bear the burden of proving that defendant violated the act as to each complaining plaintiff.

Plaintiffs argue that defendant violated Wis.Stat. § 427.104(1)(j), which states that a debt collector shall not "[c]laim, or attempt to enforce a right with knowledge or reason to know that the right does not exist," when it sent plaintiffs debt collection notices under the false name of "Peppertree Resorts Ltd. Credit and Collection Department." Unlike the FDCPA, the Wisconsin Consumer Act does not have an explicit provision prohibiting third-party debt collection under a

false name or alias. Nevertheless, the provisions of the Wisconsin Consumer Act are to be "liberally construed and applied to promote their underlying purposes and policies." Wis.Stat. § 421.102(1). These policies include "protect[ing] customers against unfair, deceptive, false, misleading and unconscionable practices by merchants," Wis.Stat. § 421.102(2)(b), and "coordinat[ing] the regulation of consumer credit transactions with the policies of the federal consumer credit protection act," Wis.Stat. § 421.102(2)(d). Taking into account these underlying policy considerations and the more general prohibitive language of § 427.104(1)(j), I find that defendant's third-party debt collection practices of attempting to collect debts owed to Peppertree Resort Villas, Inc. under the false name of "Peppertree Resorts Ltd. Credit and Collection Department" violated the Wisconsin Consumer Act. Defendant had reason to know that it did not have a right to collect debts under a name other than its own, especially in light of the fact that such conduct is prohibited explicitly by the FDCPA. *See* 15 U.S.C. § 1692e(14).

Because the Wisconsin Consumer Act is a strict liability statute, *First Wisconsin National Bank v. Nicolaou,* 113 Wis.2d 524, 534–35, 335 N.W.2d 390, 395 (1983), and plaintiffs are seeking statutory damages only, it is unnecessary to determine whether other violations of the Wisconsin Consumer Act have occurred. Unlike the FDCPA, the number of violations does not affect the amount of liability. *See* Wis. Stat. § 425.304(1) (liable for "[t]wice the amount of the finance charge in connection with the transaction, except that liability under this subsection shall not be less than $100 nor greater than $1,000"). Plaintiffs have shown that defendant violated the act, specifically § 427.104(1)(j), as to each plaintiff in this consolidated lawsuit (except for the Pipps, who did not plead a violation under the Wisconsin Consumer

Act). Therefore, plaintiffs' motion for summary judgment will be granted as to their Wisconsin Consumer Act claim and defendant's motion for summary judgment will be denied.

### D. *Statutory Damages and Attorney Fees*

Under both the FDCPA and Wisconsin Consumer Act, the maximum statutory penalty is $1000 for each proceeding. *See* 15 U.S.C. § 1692k(a)(2)(A), Wis.Stat. §§ 427.105(1), 425.304(1); *see also Barber v. National Revenue Corp.,* 932 F.Supp. 1153 (W.D.Wis.1996) (FDCPA limits statutory damages to $1000 for each proceeding rather than each violation of the statute). Under the FDCPA, plaintiffs are entitled to a jury determination as to statutory damages. *See Kobs v. Arrow Service Bureau, Inc.,* 134 F.3d 893, 897 (7th Cir.1998) ("a party is entitled to a jury trial for *all* damages under the FDCPA—statutory or actual") (emphasis in original). In contrast, under the Wisconsin Consumer Act, statutory damages are determined relative to the amount of the finance charge, limited by a $100 floor and $1000 ceiling. *See* Wis.Stat. § 425.304(1). Plaintiffs may have until March 29, 2002, in which to brief the issue of statutory damages as to each plaintiff under the Wisconsin Consumer Act and defendant may have until April 10, 2002, in which to file a brief in response. In briefing damages under Wisconsin Consumer Act, the parties should address the question whether the language "twice the amount of the finance change in connection with *the transaction*" in Wis.Stat. § 425.304(1) (emphasis added) encompasses the finance charges on the entire loan or only on the amount of debt that defendant attempted to collect in violation of the act.

Because the FDCPA and Wisconsin Consumer Act are fee-shifting statutes and

summary judgment will be granted in plaintiffs' favor, plaintiffs are entitled to reasonable attorney fees and costs. *See* 15 U.S.C. § 1692k(a)(3) and Wis.Stat. § 425.308. After the amount of statutory damages under each act has been determined, plaintiffs will be allowed to submit an itemized statement of attorney fees and costs incurred in bringing these actions and defendant will be allowed to file objections to the amount of fees and costs sought by plaintiffs.

## ORDER

IT IS ORDERED that

1. Defendant Meridian Financial Services, Inc.'s motion for summary judgment against Allen W. Hartman, Kimberly M. Hartman, Khay Yang, Bee Yang, Patrick Gums, Shari Gums, Kelly Millard, Terry Reany, Tina Reany, Derrick Jones, Eric Sennholz, Michael Pipp and Kristine Pipp is DENIED;

2. Plaintiffs' motion for summary judgment against defendant is GRANTED;

3. Plaintiffs may have until March 29, 2002, in which to brief the issue of statutory damages as to each plaintiff under the Wisconsin Consumer Act and defendant may have until April 10, 2002, in which to file a brief in response.