**Alan BERNDT and Debra Berndt, Plaintiffs,**

v.

**FAIRFIELD RESORTS, INC., Defendant.**

**No. 04–C–0049–C.**

United States District Court, W.D. Wisconsin.

Aug. 31, 2004.

1122

Mary C. Fons, Stoughton, WI, for Plaintiffs.

Jon G. Furlow, Michael Best & Freidrich, LLP, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for declaratory and monetary relief brought by plaintiffs Alan and Debra Berndt against defendant Fairfield Resorts, Inc. Plaintiffs contend that defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692—1692o, and the Wisconsin Consumer Act, Wis. Stat. § 427.104(1)(f), (h), (i) and (j) by engaging in illegal and deceptive debt collection practices. Jurisdiction is present under 28 U.S.C. § 1331.

Presently before the court are (1) the parties' cross motions for summary judgment; (2) defendant's motion to dismiss the state law claim; (3) defendant's motion to amend the pleadings to allow a bona fide error defense; and (4) defendant's motion to strike plaintiff's additional proposed findings of fact.

Plaintiffs contend that the letters they received from defendant contain numerous failures to comply with the Fair Debt Collection Practices Act, and for that reason, plaintiffs are entitled to judgment as a matter of law. Defendant argues that it is not a "debt collector" as that term is defined in the statute, or alternatively, that it is exempted from that definition. Also, defendant contends that plaintiffs' state law claim should be dismissed if the claim under federal law is denied.

Plaintiffs' motion for summary judgment will be granted and defendant's motion will be denied with respect to the alleged violation of the Fair Debt Collection Practices Act. Plaintiffs have satisfied their burden of proving there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Defendant's motion for summary judgment as to plaintiffs' claim under the Wisconsin Consumer Act will be granted and plaintiffs' will be denied because the debt in question is not covered by the statute. I will grant defendant's motion to amend the pleadings to introduce a bona fide error defense but only as that defense relates to damages. Because it is unnecessary to consider plaintiff's additional proposed findings of fact, I will deny defendant's motion to strike those facts as unnecessary.

From the proposed findings of fact submitted by the parties and from the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Plaintiffs Alan and Debra Berndt are married adults living in Waterloo, Wisconsin. Defendant Fairfield Resorts, Inc. is a corporation that manages and develops vacation properties. Part of defendant's business includes the sale of condominiums and condominium timeshares. In 1999 or 2000, defendant purchased a company called Equivest, which had previously purchased Peppertree Resort Villas Inc. Peppertree Resorts Management, Inc. is a subsidiary of Peppertree Resort Villas, Inc.

The Peppertree at Tamarack Owners Association, Inc. is a group of condominium owners that oversees the management of individual and community property for the group of condominiums that includes the one purchased by plaintiffs from Peppertree Resort Villas, Inc. The Association has no corporate affiliation with any of the above named parties. However, in 1997, the Association entered into a contract with Peppertree Resorts Management, Inc. in which the Association gave Peppertree Resorts Management, Inc. the rights

to manage its property. The contract granted Peppertree Resorts Management, Inc. the right to "apply Assessments and maintenance Fees as it determines as to those items specified in the By–Laws of the Association." Dep. of Jeffrey Thomas Lessey, dkt. # 14, Exh. # 4 at 7.

### B. *Plaintiffs' Contract with Peppertree Resort Villas, Inc.*

In 1997, plaintiffs purchased a timeshare condominium under a land contract from Peppertree Resort Villas, Inc. for personal use. Plaintiffs made a deposit on the purchase of the timeshare and made monthly payments thereafter as required by their purchase contract. In addition, plaintiffs paid monthly assessments to the Peppertree at Tamarack Owners Association.

The contract for the purchase of a timeshare condominium from Peppertree Resort Villas, Inc. carries with it "membership in the Peppertree at Tamarack Owners Association, Inc." and a requirement to pay maintenance fees "established by the Owners Association." Failure to pay those fees gives the Association the right to take action against a member such as "denial of the use of ... unit weeks." Aff. of Debra Berndt, dkt # 21, Exh. B at 1–2.

### C. *Plaintiffs' Cancellation of their Timeshare Purchase*

Plaintiffs attempted to cancel their timeshare contract in late 2002, after a dispute arose between them and Fairfield Resorts, Inc. (Plaintiffs refer to this dispute as being between them and "Peppertree" or between them and defendant Fairfield Resorts, Inc. interchangeably. Because Peppertree Resorts, Inc. was purchased by defendant Fairfield Resorts, Inc. prior to 2002, I assume plaintiffs mean defendant Fairfield Resorts, Inc.) Defendant declined to cancel the contract despite requests from plaintiffs and later from plaintiffs' attorney. Plaintiffs' attorney filed a lawsuit on plaintiffs' behalf on February 12, 2003 to attempt to cancel the contract. On May 29, 2003, defendant made an offer of judgment to plaintiffs that included cancellation of the contract. Plaintiffs accepted that offer on June 5, 2003.

### C. *The Collection Letters*

Shortly after cancelling their timeshare agreement, plaintiffs received a letter dated July 1, 2003, identifying Fairfield Resorts, Inc. as the manager of the Peppertree at Tamarack Owners Association's property and asserting that plaintiffs owed $622.45 to the Association for "Maintenance Fee Assessments, Late Fees, Interest, etc." Although the debt had been forwarded to a collection agency, the letter advised plaintiffs that they had thirty days in which to pay or dispute the amount owed before the account would be turned over to a "collection agency." Defendant sent the letter despite the fact that its own computer records indicated that plaintiffs should not be contacted with collection attempts because of their involvement in a legal proceeding.

Defendant sent a second document to plaintiffs in December 2003 under the name "Fairfield Resorts Management," asserting that plaintiffs owed $1,124.40 to the Association for "2004 Annual Maintenance Fees" and an "Outstanding Balance." Fairfield Resort Management is a group within defendant that handles management responsibilities for Peppertree at Tamarack on behalf of the Peppertree at Tamarack Owners Association. In this document, Fairfield Resorts Management warned plaintiffs of a late fee of $25 and a delinquency fee of 25% of the amount owed for which they would be responsible after January 31, 2004 and March 1, 2004, respectively. In addition, Fairfield Resorts Management warned plaintiffs that if the amount was not paid, the debt would be turned over to a collection agency.

Defendant admits that both the July and December letters were sent in error and that plaintiffs did not owe the amount asserted. Defendant's staff created the letters that it sent to collect the assessments under a system defendant has in place to handle collection activity for Peppertree and other resorts. Defendant admits that its computer billing system should have "flagged" plaintiffs' account as "legal," thus preventing it from sending the collection letters.

Defendant sent approximately 4,700 letters like the ones plaintiffs received in 2003. A portion of that number includes past due balances. That number accounts for less than one percent of defendant's management functions.

## OPINION

### A. *Fair Debt Collection Practices Act*

The first question is whether defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692—1692o, when it sent the July and December 2003 letters to plaintiffs. According to plaintiffs, defendant sent the letters in violation of proscriptions against sending collection notices to debtors directly when the collector knows that they are represented by an attorney with respect to that debt and the letters failed to comply with the notice requirements described in the statute and either misrepresented or used false information to collect a debt.

To succeed on a claim under the Fair Debt Collection Practices Act, a plaintiff must first show that the money being collected qualifies as "debt" under the statute. 15 U.S.C. § 1692a(5). Second, the collecting entity must qualify as a "debt collector." 15 U.S.C. § 1692a(6). Third, a plaintiff must show that the debt collector violated 15 U.S.C. §§ 1692—1692o.

Defendant contends that it does not fit within the definition of a debt collector under 15 U.S.C. § 1692a because collecting

debts is not a "principal purpose" of its business and it does not regularly collect debts for a *third party*. In the alternative, defendant contends that it is exempted from the definition of debt collector because (1) its collection of debts is incidental to a "bona fide fiduciary obligation"; (2) the debt being collected originated from defendant; and (3) the collection notices concern a debt that was not in default at the time defendant obtained the right to collect it.

### 1. *Debt*

Section 1692a(5) of the Fair Debt Collection Practices Act defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services that are the subject of the transaction are primarily for personal, family, or household purposes ..." The Court of Appeals for the Seventh Circuit has determined that "debt" requires no more than a "transaction creating an obligation to pay." *Newman v. Boehm, Pearlstein and Bright, Ltd.*, 119 F.3d 477, 480 (7th Cir.1997). The transaction in this case was the purchase of the timeshare condominium, which carried with it the obligation to pay association fees. *Id.* at 481. It is undisputed that the transaction was made for personal purposes. The Association assessment qualifies as a debt under the Act. *Id.*

### 2. *Debt Collector*

Before analyzing whether defendant is a "debt collector" under the Act, I must first determine who the "creditor" is in this case. A party acting in its capacity as "creditor" when collecting a debt it is owed is exempted from the definition of "debt collector." 15 U.S.C. § 1692a(6)(A). The statute defines a "creditor" as "any person who offers or extends credit creat-

ing a debt or to whom a debt is owed[.]" 15 U.S.C. 1692a(4). In other words a party becomes a creditor in one of two ways: by extending credit to another or by being owed money regardless of any credit extension.

■ Defendant argues that it is the "creditor" under the statute because, as a successor in interest to Peppertree Resort Villas, Inc., it extended credit to plaintiffs, which created a debt through plaintiffs' purchase of the timeshare contract. Defendant relies on *Hartman v. Meridian Financial Services, Inc.*, 191 F.Supp.2d 1031 (W.D.Wis.2002), in which this court held in a similar situation that Peppertree Resort Villas, Inc. was the creditor. In that case, however, it was unnecessary to address the creditor question because the parties had stipulated that Peppertree Resort Villas, Inc. was a creditor. In addition, in *Hartman,* the debt in question consisted not only of association fees, but of defaulted payments on loans extended by Peppertree Resort Villas, Inc. In this case, by contrast, the debt in question does not concern an extension of credit. Rather, "creditor" status is determined by identifying the entity to which the debt is owed.

Thus, the question is which entity is due the maintenance fees that plaintiffs are obligated to pay under the timeshare purchase contract. The Court of Appeals for the Seventh Circuit has determined that an obligation to pay association fees that is created from a condominium timeshare purchase contract stems from that purchase. *Newman,* 119 F.3d at 480. In this case, the contract language and extrinsic evidence suggest that the Association fees are debts owed to the Association. In the contract, plaintiffs agree to pay maintenance fees "established by the Owners Association." Aff. of Debra Berndt, dkt # 21, Exh. B at 2. Any adverse action for failure to pay those fees is to be undertak-

en by the Association. *Id.* The language is not totally free from ambiguity, however. It does not state unequivocally that the fees are owed to the Association. However, defendant admits that the collection actions it undertook were "on behalf of the Peppertree at Tamarack Owners Association." Dft.'s PFOF 6. Additionally, the collection letters in question direct plaintiffs to pay the fees to the Association. Taking into consideration the contract language and the extrinsic evidence, I conclude that the debt owed was due to the Association. Therefore, the Association is the creditor under the statute.

■ Because defendant is not the creditor, it is necessary to determine whether defendant must be considered a "debt collector." The Fair Debt Collection Practices Act defines a "debt collector" as:

Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Defendant's mailing of collection notices accounts for less than one percent of its total management functions, suggesting that debt collection is not a "principal purpose" of defendant's business. However, defendant "regularly" collects debts for the Association and other third parties, which suggests that it falls into the second group of actors that qualify as debt collectors under the statute. This group includes those who: (1) "regularly" attempt to collect debt; and (2) collect the debt on behalf of another.

The Court of Appeals for the Seventh Circuit has not espoused a test or set of guidelines to determine the "regularity" prong of this statute. However, other circuits have found regularity where collec-

tion notices have been sent far less frequently than defendant sent its notices. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll and Bertolotti,* 374 F.3d 56 (2d Cir.2004) (finding regularity where 145 notices were sent, spread evenly over a period of twelve months); *Garrett v. Derbes,* 110 F.3d 317 (5th Cir.1997) (finding attorney who attempts to collect debts owed by 639 different individuals to another is doing so "regularly" despite fact that collection efforts represent less than 0.5 percent of his business). Defining regularity on the basis of consistency and volume is a logical way to read § 1692a(6). In this case, it is undisputed that defendant sent 4,700 collection notices in 2003, which is significantly more than 145 notices sent in one year. It is reasonable to find that sending 4,700 collection notices in one year makes a defendant a regular collector.

The inquiry is not over, however. To qualify as a debt collector under the statute, defendant must regularly collect debt *owed to another.* I have concluded that defendant is not the creditor because any debt from the July and December 2003 letters was owed to the Association under the purchase contract. The Association is a third party because there is no common ownership or corporate affiliation between it and defendant. In collecting on behalf of the Association, defendant is collecting for "another" under the statute. Therefore, defendant must be considered a "debt collector" under the statute.

■ Even though defendant qualifies as a "debt collector," it may fall under one of the exemptions under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692a(6)(F) exempts from debt collector status:

"[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona

fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party or in a commercial credit transaction involving the creditor".

It is defendant's burden to proof it qualifies for one of these exemptions. Defendant argues that it should be exempted from the definition because (1) its collection of debts is incidental to a "bona fide fiduciary obligation"; (2) the debt being collected originated from defendant; and (3) the collection notices concern a debt that was not in default at the time defendant obtained the right to collect it. It is defendant's burden to prove that it qualifies for one of these exemptions.

For the first exemption to apply, defendant would need to show that it contracted with the Association and that the contract created a fiduciary relationship between the two entities. For the third exemption to apply, defendant would be required to show that it legally obtained the right to collect the debt, and that when it did, those debts were not in default. Defendant claims that it satisfies both of these exemptions by virtue of the management agreement between its subsidiary, Peppertree Resorts Management, Inc., and the Association. Although it is likely that the management agreement in this case would place a contracting party into one or both of these exemptions, Peppertree Resorts Management, Inc., and not defendant, was a party to that agreement. For defendant to claim these exemptions, therefore, it would have to show that it acquired the rights outlined in the management agreement from Peppertree Resorts Management, Inc.

■ A basic tenet of corporate law is that subsidiaries and parent corporations

are designed to be legally separate from one another. *Sea–Land Services, Inc. v. Pepper Source,* 941 F.2d 519 (7th Cir. 1991). Parent companies are shielded from liability for a subsidiary's actions through a "corporate veil." *In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978,* 699 F.2d 909, 914–15 (7th Cir.1983). That veil also functions as a restraint on a parent company's involvement in a subsidiary's affairs. Rights made by contract with a subsidiary are the subsidiary's rights alone. They do not automatically transfer to a parent company solely by virtue of common ownership.

■ Defendant is a successor in interest to Peppertree Resort Villas, Inc., the parent company of Peppertree Resorts Management, Inc. However, defendant has not introduced any evidence that demonstrates that it acquired the contract rights of all subsidiaries of Peppertree Resort Villas, Inc. upon its purchase. Defendant, therefore, cannot show that it had a fiduciary relationship with the Association or that it obtained the right to collect the Association's fees, either prior to the debts' obtaining default status or after that. Therefore, defendant does not qualify for either the first or third exemptions.

Defendant argues that the debt originated with it and therefore falls under the second exemption under the Act. As explained above, although the obligation to pay the debt arose out of the initial purchase agreement with Peppertree, plaintiffs had the obligation to pay the debt to the Association. Peppertree never extended any credit to plaintiffs and plaintiffs never owed Peppertree any debt. The debt originated with the Association, not defendant. As a result, defendant does not qualify for any of the exemptions under the Act.

■ Even though defendant is a debt collector under the Fair Debt Collection Practices Act, plaintiffs must still show that defendant violated the Act. Because the Fair Debt Collection Practices Act is a strict liability statute, proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim. *Hartman,* 191 F.Supp.2d at 1046 (citing *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.1997)). Nevertheless, the number of violations may be used to determine statutory damages up to a maximum of $1000. See 15 U.S.C. § 1692k(b)(1) (in determining amount of liability in Fair Debt Collection Practices Act action, "the court shall consider, among other relevant factors … the frequency and persistence of noncompliance by the debt collector.") Therefore, in order to provide a basis for determining statutory damages, I will address all of plaintiffs' allegations of Fair Debt Collection Practices Act violations.

■ Plaintiffs contend that defendant violated 15 U.S.C. §§ 1692(c)(2), 1692e(2)(A), 1692e(5), 1692e(10), 1692e(11), 1692g(a)(4), 1692g(3) and 1692g(5). 15 U.S.C. § 1692e(2)(A) prohibits the "false representation of the character, amount, or legal status of any debt." It is undisputed that the debt named in both communications from defendant to plaintiffs was not owed by plaintiffs; defendant admits that both the July and December letters were sent in error. Even an "unintentional misrepresentation of the amount of the debt violates [15 U.S.C. § 1692e(2)(A) ]." *Patzka v. Viterbo College,* 917 F.Supp. 654, 658–59 (W.D.Wis.1996). Therefore, I find that defendant violated 15 U.S.C. § 1692e(2)(A).

■ 15 U.S.C. § 1692e(5) prohibits debt collectors from threatening to take action "that is not intended to be taken." In other words, the section is guarding against empty threats intended only to scare a debtor. In defendant's first collection letter to plaintiffs, defendant stated that it would forward the debt to a "collec-

tion agency." However, defendant had sent the balance to a collection agency before it sent the letter. It is difficult to understand why defendant would want to send plaintiffs' debt to a collection agency twice. I view defendant's action as an empty threat and conclude that it violated 15 U.S.C. § 1692e(5).

15 U.S.C. § 1692e(10) prohibits the use of "false representation ... to collect or attempt to collect any debt." The fact that there was no debt owed by plaintiffs to defendant means that defendant misrepresented that debt in both collection letters. Although in *Patzka*, I addressed only unintentional violations of 15 U.S.C. § 1692e(2)(A), the reasoning in that opinion is equally applicable to an unintentional misrepresentation under 15 U.S.C. § 1692e(10). To exempt unintentional misrepresentations from 15 U.S.C. § 1692e(10) would render the bona fide error defense of 15 U.S.C. § 1692k(c) obsolete. That section allows for an affirmative defense based on unintentional violations, see discussion *infra*. I find defendant has violated 15 U.S.C. § 1692e(10).

15 U.S.C. § 1692g(a) sets out specific notice requirements that must be included with every debt collection communication. For example, 1692g(a)(4) requires a debt collector to notify a debtor that the debtor can require the collector to obtain verification of the debt or a copy of a judgment against the debtor if the debtor disputes the debt. 1692g(a)(3) requires debt collectors to advise debtors that they have thirty days in which to dispute the debt, after which that debt would be assumed valid. The first and second letters to plaintiffs violated 1692g(a)(4) because the letters did not include the required language concerning verification of the debt. The second collection communication from defendant violated 15 U.S.C. § 1692g(a)(3) as well by failing to provide the required information for disputing the debt.

15 U.S.C. § 1692e(11) penalizes the "failure to disclose in the initial written communication ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." The only route to compliance with this section is to include specific language in the letter, such as "we are a debt collector, attempting to collect a debt and any information obtained will be used for that purpose." *Tolentino v. Friedman*, 46 F.3d 645, 650 (7th Cir.1995) (finding defendant had violated § 1692e(11) by not including required language in document entitled "IMPORTANT NOTICE"). Defendant's letters do not include language that clearly states that defendant is a debt collector and that any information it obtains will be used for collection purposes. Therefore, the letters violate 15 U.S.C. § 1692e(11).

15 U.S.C. § 1692g(a)(5) requires that debt collectors advise debtors that the collectors will furnish the name and address of the "original creditor" if asked. A plain reading of this section shows that it applies only if the original creditor is "different from the current creditor." 15 U.S.C. § 1692g(a)(5). Because the Association was both the original creditor for this debt and the current creditor when defendant sent the letter, this requirement does not apply to defendant. Defendant did not violate 15 U.S.C. § 1692g(a)(5)

A debt collector violates 15 U.S.C. § 1692c(a)(2) if it communicates directly with a debtor after it knows that the debtor is represented by an attorney with respect to the debt in question. The Court of Appeals for the Third Circuit has found that an attorney's representation has to be specific to the debt in question under the statute. *Graziano v. Harrison*, 950 F.2d

107, 113 (3d Cir.1991) (fact that defendant contacted debtor directly about two debts that arose after original debt despite knowledge that debtor represented by counsel with respect to original debt was not violation of § 1692c(a)(2), unless plaintiff can show that defendant knew that plaintiff was represented by attorney specifically for two later debts).

 The Third Circuit's approach is a fair reading of the statute. I will adopt it in this case, in which plaintiffs were represented by an attorney with respect to the cancellation of their timeshare agreement but gave defendant no indication that they were represented with respect to the debt referred to in defendant's July and December 2003 letters. Plaintiffs accepted the offer of judgment resolving the legal dispute over the cancellation on June 5, 2003. The communications at issue were sent after that date. Plaintiffs' debt to the Association is distinct from the cancellation of the timeshare contract. Defendant could not have been expected to know that plaintiffs were represented by an attorney after the cancellation of their contract. Because the debts sought to be collected are not explicitly part of the timeshare cancellation litigation and because there is no evidence that defendant would have known that plaintiffs had legal representation for these debts, I conclude that defendant did not violate § 1692c(a)(2) of the Act.

B. *Defendant's Motion to Amend Pleadings to Include a Bona Fide Error Defense*

 Defendant raises a bona fide error defense to the claims against it for the first time in its response brief to plaintiffs' motion for summary judgment. The bona fide error defense is an affirmative defense that should have been raised in the answer to plaintiffs' complaint. An amendment to an answer should be al-

lowed, however, if it is in the interest of justice and does not prejudice plaintiff. Although plaintiffs would not be prejudiced by the allowance of the introduction of this affirmative defense because plaintiffs have already responded to an identical defense for the state law claims in their reply brief, allowing the defense would not affect defendant's liability.

 Under the bona fide error defense, a debt collector may not be liable if evidence shows that its violation was unintentional and "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In other words, for each violation, defendant has to prove that it had in place a procedure that *should* have prevented the violations from occurring. Defendant argues that its computer encoding system should have flagged plaintiffs' account as "legal" and therefore prevented the letters from being sent to plaintiffs. Defendant's system may provide a valid defense to some of the violations under 15 U.S.C. § 1692e involving the misrepresentation of information, because it may have forced defendant to discover that there was in fact no debt owed, and kept defendant from claiming that there was. However, it would not provide a defense for the violations under 15 U.S.C. § 1692g or 15 U.S.C. § 1692e(11), which set out the specific language that must appear in debt collection notices. As I concluded earlier, defendant violated 15 U.S.C. §§ 1692g(a)(3) and (4) and 1692e(11) because its July and December letters failed to include the necessary language required by those subsections of the Act. Defendant has adduced no evidence that its system erred by omitting the necessary language. Therefore, defendant may not use the bona fide error defense in response to its violations under 15 U.S.C. §§ 1692g(a) and 1692e(11). Be-

cause the Fair Debt Collection Practices Act is a strict liability statute, only one violation is required to impose liability on a defendant. *Hartman v. Meridian Financial Services, Inc.*, 191 F.Supp.2d 1031, 1046 (W.D.Wis.2002) (citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997)). Because the bona fide error defense would not extend to the violations of 15 U.S.C. § 1692g or 15 U.S.C. § 1692e(11), it would make little difference whether the defense was considered for liability purposes. However, defendant may present the issue of intent at the damages trial. Defendant's motion to amend the pleadings will be granted to allow defendant to assert the affirmative defense of bona fide error as it relates to damages only.

### C. *The Wisconsin Consumer Act*

■ Plaintiffs argue that defendant violated several subsections of Wis. Stat. § 427.104(1), which is part of the Wisconsin Consumer Act, Wis. Stat. §§ 421–427. Wis. Stat. § 427.104(1) prohibits debt collectors from engaging in certain practices while "attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction where there is an agreement to defer payment." Because the debt in the current case does not qualify as a consumer credit transaction or an agreement to defer payment the statute does not apply.

Wis. Stat. § 421.301(10) defines "consumer credit transaction" as "a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments." "Credit" is defined in Wis. Stat. § 421.301(14) as "the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis."

As discussed above, the Association is deemed the creditor in this case by virtue of the fact that the debt in question is owed to it, not on the basis of an extension of credit. The Association did not extend credit to plaintiffs or agree with them to defer payment or pay the debt on a time price basis. The bills sent to plaintiffs are intended to be generated on the basis of a projected budget drawn up by the Association, with the owners to pay their bill before the services are rendered. Such an arrangement amounts to a cash purchase for services. Moreover, the term "time price basis" does not cover plaintiffs' agreement to pay annual maintenance fees. Rather, that term connotes a process in which a customer pays portions of the total amount owed over a fixed period of time and agrees to a higher overall price after finance charges are applied.

■ I agree with defendant that the Wisconsin Consumer Act is fundamentally different in some ways from the Fair Debt Collection Practices Act. Wis. Stat. § 427.104(1) is not written to cover all debt, as are the sections of the Fair Debt Collection Practices Act. Instead, the legislature explicitly reserves this section of the statute for collections of debt arising from extensions of credit or agreements to defer payment. Plaintiffs' debt does not qualify. Accordingly, defendant's motion for summary judgment is granted and plaintiffs' motion is denied with respect to their claim under the Wisconsin Consumer Act.

### ORDER

IT IS ORDERED that

1. Plaintiffs' motion for summary judgment is GRANTED with respect to the claim under the Fair Debt Collection Practices Act; defendant's motion as to that claim is DENIED.

2. Defendant's motion for summary judgment is GRANTED with respect to the claim under the Wisconsin Consumer Act; plaintiffs' motion as to that claim is DENIED.

3. Defendant's motion to amend the pleadings to allow a bona fide error defense is GRANTED but only as the defense relates to damages..

4. Defendant's motion to strike plaintiffs' additional proposed findings of fact is DENIED as unnecessary.